THE STATE OF OHIO, APPELLEE, *v.* YOUNG, APPELLANT.

[Cite as State v. Young, 8 Ohio App. 2d 51.]

(No. 2920—Decided January 10, 1966.)

*Mr. Lee C. Falke,* prosecuting attorney, *Mr. Walter H. Rice* and *Mr. Robert A. Skinner,* for appellee.

*Messrs. Abrahamson, Arnovitz & Saeks,* for appellant.

KERNS, J. The defendant, appellant herein, Louis Young, was arrested by officers of the Dayton Police Department near the corner of Fifth and Sprague Streets at approximately 12:30 p. m. on March 24, 1964. He was later indicted by a Montgomery County Grand Jury, tried by the Court of Common Pleas without a jury, and convicted for possession of "numbers game" tickets contrary to Section 2915.111, Revised Code.

In seeking a reversal of the judgment, the defendant has set forth nineteen assignments of error. The assigned errors are not argued seriatim, and many of them appear to be repetitious. However, the defendant's brief does advocate four general propositions.

The first of these propositions is based upon the contention that the arrest and search of the defendant was devoid of constitutional validity.

In this regard, the case of *Beck* v. *Ohio*, 379 U. S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223, states as follows:

"There are limits to the permissible scope of a warrantless search incident to a lawful arrest, but we proceed on the premise that, if the arrest itself was lawful, those limits were not exceeded here. See *Harris* v. *United States*, 331 U. S. 145 [91 L. Ed. 1399, 67 S. Ct. 1098]; *United States* v. *Rabinowitz*, 339 U. S. 56 [94 L. Ed. 653, 70 S. Ct. 430]; cf. *Preston* v. *United States*, 376 U. S. 364 [11 L. Ed. 2d 777, 84 S. Ct. 881]. The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Brinegar* v. *United States*, 338 U. S. 160, 175-176 [93 L. Ed. 1879, 1890, 69 S. Ct. 1302]; *Henry* v. *United States*, 361 U. S. 98, 102 [4 L. Ed. 2d 134, 138, 80 S. Ct. 168]. 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' *Brinegar* v. *United States, supra* [338 U. S. at 176, 93 L. Ed., at 1891]."

In the *Beck case*, the United States Supreme Court set itself up as a fact finding body and reversed the Ohio Supreme Court on the theory that the evidence of probable cause in that case was insufficient to justify the petitioner's arrest without a warrant.

However, the evidence in the present case on the question of probable cause is more convincing than the evidence presented in the *Beck case,* and, furthermore, there is undisputed evidence in this record that the defendant-appellant voluntarily consented to the search of his person at or about the time of his arrest. Here, the arrest of the defendant was not based on mere suspicion. Nor was it the product of any rash judgment or indiscretion. According to the evidence and the

only reasonable inferences which might be drawn therefrom, the arrest was the result of the careful planning and diligence of experienced police officers whose combined knowledge was amply sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense. This is all that the law requires. Indeed, to require more in cases where the most incriminating evidence is subject to such easy disposition as numbers slips would unduly hamper law enforcement.

The second proposition urged and argued by the defendant is that "a defendant, in a criminal proceeding, should be allowed to testify solely for the purpose to elicit facts concerning an unlawful arrest, search and seizure, where a motion to suppress has been timely filed, without defendant waiving his privilege against self-incrimination on all other facts in issue."

Prior to trial, the defendant filed two motions to suppress evidence. The record discloses that these motions were acknowledged by the trial court before any evidence was presented, at which time defense counsel asked the court whether it would rather have the motions argued before the trial, or begin the trial, hear the evidence, and then consider the motions. The trial court, with the acquiescence of defense counsel, adopted the latter procedure. Hence, the trial proceeded and the evidence sought to be suppressed was subsequently introduced and admitted over the objection of the defendant.

At the conclusion of the evidence, and after the state rested, the defendant moved to be heard solely upon the issues raised by the motions to suppress. The trial court denied the motion on the ground "that the defendant in a criminal action is not permitted to take the witness stand for such limited purpose." The defendant did not testify at the trial, and the evidence in the present record upon the nature of the arrest, the search, and probable cause is therefore limited to the evidence presented by the prosecution.

In our opinion, the trial procedure in this case was erroneous. The motions to suppress should have been heard independently prior to the trial of the case. In fact, if the motions had been sustained, there probably would have been no trial. In order to illustrate the inherent danger of unnecessarily delaying a hearing on a motion to suppress, suppose that the present case was heard by a jury. Could the prosecution fairly

introduce illegal evidence against the defendant and then withdraw it after the trial is completed? Under such circumstances, the suppression of the evidence at the conclusion of the trial would obviously be no more than an empty gesture. Or, as in the present case, where the evidence was heard by the court, the defendant was at least entitled to an independent hearing upon the motions without submitting himself at the trial itself and without having the same evidence presented upon the motions used in the determination of his guilt or innocence at the trial. The failure to conduct a hearing on the motions to suppress prior to the trial, coupled with the subsequent disallowal of any independent hearing upon such motions, effectively denied the defendant the right to refute any of the testimony presented by the prosecution upon the issues surrounding the arrest, the search, and probable cause, and thus prevented the defendant from challenging the constitutional validity of the evidence used to establish his guilt.

Admittedly, the evidence of guilt presented by the prosecution in this case is overwhelming, and, if at all possible, we would avoid the necessity for another trial. But regardless of the present state of the evidence, it is nonetheless our duty to provide the defendant an adequate hearing on the motions to suppress and a trial fairly conducted in accordance with the ruling on the motions. The second argument is therefore well made.

Upon the evidence presently in the record, all of which was produced by the prosecution, the third and fourth propositions advocated and argued by the defendant are without merit, and we can do no more, at this point, than speculate upon what the evidence upon such propositions will ultimately show when fully developed by the defense at any future hearing upon the motions to suppress.

But for the reason set forth herein, the judgment and sentence of the defendant must be, and hereby are, reversed, and the cause remanded to the Court of Common Pleas for a new trial.

*Judgment reversed.*

SHERER, P. J., and CRAWFORD, J., concur.