THE STATE OF OHIO, APPELLEE, *v.* CULP, APPELLANT.

( No. 1304—Decided August 23, 1971.)

*Messrs. Dailey & Dailey,* for appellant.
*Mr. William Gemmill,* city attorney, for appellee.

GUERNSEY, J. (Presiding). In this appeal the dissenting opinion, first written, ably sets forth the disposition of all of the errors assigned by the appellant. Under these circumstances it would be a useless and absurd task for us to rewrite in this majority opinion either a statement of facts or the disposition of the first, third and fourth assignments of error, with which disposition we concur. We, therefore, set forth in this opinion only our reasons for dis-

agreement with Judge Troop as to the disposition of the second assignment of error and, of course, the resulting judgment.

The second assignment of error is that the affidavit fails to allege any offense under the law since an essential element of the crime attempted to be charged, the intent to produce hallucinations or illusions, is not alleged therein.

The defendant was first charged by affidavit with having under his control a narcotic drug, cannabis sativa, ''contrary to Section 3919.09 of the Ohio Revised Code.'' To this affidavit he filed a demurrer on the ground that it did not charge an offense. In his memorandum appended thereto he specified that it did not do so because, by reason of amendments which became effective September 16, 1970, the crime of possession of marijuana could be charged only under R. C. 3719.41. Before the municipal court ruled on the demurrer the State filed a new affidavit charging (omitting formal parts) that the defendant ''did then and there not being a manufacturer, wholesaler, pharmacist, owner of a pharmacy, or other person authorized to administer or dispense hallucinogens, have in his possession or control an hallucinogen contrary to the Statutes 3719.41 O. R. C.''

No challenge of any sort was made to the sufficiency of this affidavit prior to the assignment of error on appeal.

In determining the sufficiency of this affidavit we are not concerned with the fact that merely a misdemeanor is involved, and the tests of its sufficiency may not be different or more lenient than the tests for the sufficiency of an indictment, it being specifically provided by R. C. 2941.35 that ''laws as to form, sufficiency, amendments, objections, and exceptions to indictments * * * apply to such affidavits * * * .'' The charge purports to be under the provisions of R. C. 3719.41, proscribing:

''No person shall, *with intent to produce hallucinations or illusions,* purchase, use, possess, or have under his control an hallucinogen. Possession or control of any hallucinogen specifically named in section 3719.40 of the Re-

vised Code constitutes prima-facie evidence of a violation of this section * * * ." (Emphasis added.)

In *State* v. *Huffman,* 131 Ohio St. 27, the Supreme Court said:

"1. We have no common-law crimes in Ohio; neither do we have common-law criminal procedure. Consequently, if a statute defining an offense in Ohio provides that it must be committed with a particular intent, such intent becomes a material element of the offense and must be alledged in the indictment and proved on trial. * * * "

The second sentence of R. C. 3719.41 with respect to possession or control constituting prima-facie evidence of a violation of the section (including the element of "intent to produce hallucinations or illusions") is merely a rule of evidence which becomes operative only upon proof of possession or control and cannot supply an omission in the charge.

The omission from an affidavit in which a crime is attempted to be charged of a required element such as intent is not merely a defect as to form, or an immaterial defect as to substance, but is so fundamental a defect or omission as to result in an affidavit (or indictment) which fails to allege an offense and which is not subject to amendment.

Thus, in *Harris* v. *State,* 125 Ohio St. 257, the Supreme Court held:

"2. An indictment which avers that money or property was obtained by a false pretense or representation, but which contains no averment negativing the truth of such representation, is insufficient in law to constitute such offense. * * * "

In the opinion in that case, Judge Jones says:

"The material and essential facts constituting an offense are found by the presentment of the grand jury; and if one of the vital and material elements identifying and characterizing the crime has been omitted from the indictment such defective indictment is insufficient to charge an offense, and cannot be cured by the court, as such a procedure would not only violate the constitutional rights of

the accused, but would allow the court to convict him on an indictment essentially different from that found by the grand jury."

See, also, *State* v. *Parker,* 150 Ohio St. 22; *State* v. *Cimpritz,* 158 Ohio St. 490; *State* v. *Wozniak,* 172 Ohio St. 517; *State* v. *Latham,* 120 Ohio App. 176; and *State* v. *Presler,* 112 Ohio App. 437.

The rule is the same as to affidavits because the accused is entitled to know the charges to which he must respond and he may not be charged except pursuant to oath or affirmation. *Gates* v. *State,* 3 Ohio St. 293, and *Bichenlaub* v. *State,* 36 Ohio St. 140.

However, in *State* v. *Chrisman,* 9 Ohio St. 2d 27, the Supreme Court held in a case where a missing essential element of a crime charged by affidavit was supplied by amendment without a new oath or affirmation, that "the defendant, by his counsel, specifically consenting to the method of amendment and continuing his plea of not guilty and proceeding with the trial, waived objection to the want of verification." Compare *State* v. *Walker,* 20 Ohio App. 2d 179, citing *State* v. *Chrisman, supra,* involving a minor correction of date, but not the omission of a vital and material element of the offense attempted to be charged.

We do not conceive, insofar as this case is concerned, that it matters whether we consider the judgment of conviction based on an affidavit (or indictment) which fails to allege a vital or material element is void, as held in the cases preceding *Midling* v. *Perrini, Supt.,* 14 Ohio St. 2d 106, or whether we adopt Chief Justice Taft's suggestion in the *Midling* case that it would be sufficient to consider such judgment as being merely voidable. See also *State* v. *Packer,* 16 Ohio App. 2d 171. As pointed out in *State* v. *Wozniak,* 172 Ohio St. 517, 522 and reiterated in *Midling* v. *Perrini, Supt.*:

" * * * However, after a judgment of conviction for the crime sought to be charged in such indictment such a collateral attack [by an action in habeas corpus] would no longer be effective because the judgment of conviction necessarily binds a defendant, where the court rendering

it had jurisdiction of the person of the defendant and also jurisdiction of the subject matter, i. e., jurisdiction to try the defendant for the crime for which he was convicted. Such judgment of conviction is necessarily binding as between the state and the defendant and can only be set aside by a direct and not a collateral attack. * * * ''

Here we have a direct attack by way of appeal, the specific manner indicated to convert a voidable judgment into a void one. We have thus reached the ultimate issue with regard to this assignment of error, that is, whether a defendant who, before or during trial, has not made appropriate objection to the fact that the affidavit upon which he has been tried fails to allege a vital or material element identifying and characterizing the crime of which he is thereupon found guilty and does not make such objection until upon appeal from the judgment of conviction, is estopped from asserting or has waived his right to have such judgment set aside on direct appeal.

In *State* v. *Wozniak, supra,* at page 523 Chief Justice Taft (then Judge Taft) said:

''We are not confronted with a situation where a defendant, in the hope that he could secure a favorable verdict that would bar further prosecution for the crime sought to be charged, has not attacked the sufficiency of the indictment before submission of the cause to the jury; and we therefore express no opinion as to whether such defendant might be estopped from thereafter contending that an unfavorable verdict against him should be set aside. * * * ''

It does not appear that the Supreme Court has ever specifically passed upon this question although it did find such waiver in the case of *State* v. *Chrisman, supra,* where the defendant, through his counsel, affirmatively consented to an amendment of an insufficient affidavit without new verification thereto.

In 42 Corpus Juris Secundum 835, Indictments and Informations, Section 3, it is stated:

''Generally the absence of a formal accusation, or an accusation in the form prescribed by the constitution

or statutes, cannot be cured by consent, waiver, or estoppel on the part of the accused."

See also 41 American Jurisprudence 2d 1065, Indictments and Informations, Section 299. See, however, *Ex parte Stephens,* 171 Ohio St. 323, recognizing an affirmative waiver of indictment, and compare *Wells* v. *Sacks,* 115 Ohio App. 219.

In 42 Corpus Juris Secundum 1337, Indictments and Informations, Section 307, it is said:

"Although the authorities are not unanimous, it is generally held that an objection to an indictment or information on the ground that it does not set forth an offense is not waived by failure to object at a preliminary stage of the proceedings. However, mere informality or uncertainty in setting forth the offense is usually waived by pleading and going to trial without objection or by failing to raise the question by demurrer, motion to quash, or other appropriate mode."

Thus, *State* v. *Whitmore,* 126 Ohio St. 381, established the rule in Ohio that "all objections to an indictment, because of vagueness, indefiniteness, uncertainty, and insufficiency, are waived by failure to seasonably request a bill of particulars." However, in the light of the indictments there involved and in the light of later decisions of the Supreme Court the insufficiency thus referred to must be less than the omission from the indictment of a vital or material element identifying and characterizing the offense sought to be charged. See, for example, *City of Cleveland* v. *Ely,* 174 Ohio St. 403 and *State* v. *Simmans,* 21 Ohio St. 2d 258, and *State* v. *Childers,* 133 Ohio St. 508.

In *State* v. *Zaras,* 81 Ohio App. 152, this court held that there can be no valid conviction on an affidavit which does not charge an offense against the laws of the state, and a plea of guilty will not cure such defect in the affidavit.

In *State* v. *Glaros,* 170 Ohio St. 471, in a four to three decision the Supreme Court held that "it is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's

judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." We do not deem this decision conclusive in all cases, however, for it states only a general rule, involved a mere error of the trial court to have oaths or affirmation administered to prospective jurors, and is based on a conclusion that reversal cannot be had "where it does not affirmatively appear from the record that the defendant was prejudiced thereby." In the case before us, a conviction of a crime which was not charged and to which the defendant did not plead guilty, prejudice affirmatively appears from such facts alone.

In *State* v. *Ross,* 12 Ohio St. 2d 37, waiver was not involved but the court affirmed a judgment of the court of appeals affirming a judgment of the common pleas court sustaining a demurrer to an indictment which omitted an element of intent not clearly made so by statute but declared so by judicial interpretation. In *State* v. *Potts,* 16 Ohio St. 2d 111, three defendants were jointly charged with a violation of the same statute involved in the *Ross* case, and the indictment failed to include the element of intent declared necessary. One defendant demurred to the indictment and the demurrer was overruled. The other two defendants filed no independent objections and proceeded to trial on pleas of not guilty, whereupon all three were found guilty. The court of appeals reversed the conviction of the defendant who had demurred and affirmed the conviction of the other two defendants. The Supreme Court concluded that the convictions of all three should be set aside, saying:

" * * * Although this demurrer was formally filed in the name of King, that defendant was jointly indicted and jointly tried with Stone and Potts. The defect in the indictment, even as relating to Potts and Stone, was thus in effect called to the attention of the Common Pleas Court. In our opinion, it would be unreasonable to hold that a single indictment, which on appeal is found legally insufficient as to one defendant, may provide the basis for con-

viction of another defendant who is in the identical position and questions the sufficiency of that indictment on an appeal from his conviction thereunder.''

In *Midling* v. *Perrini, supra* (14 Ohio St. 2d 106), petitioner in habeas corpus had pleaded guilty to an indictment which he claimed, with strong support, did not state an offense. Although the Supreme Court held that he could not by an action in habeas corpus collaterally attack the judgment of conviction, it noted that ''although the time for an appeal 'as a matter of right' has expired, Section 2953.05, Revised Code, does provide for an appeal 'by leave.' '' The necessary implication is, of course, that appeal by leave could result in the petitioner being discharged. See also *Bolin* v. *Maxwell*, 173 Ohio St. 517.

Subsequently, in *Stacy* v. *Van Coren, Supt.*, 18 Ohio St. 2d 188, the Supreme Court denied relief by way of habeas corpus to a prisoner who had been indicted for one crime and, without further action by indictment or information, had pleaded guilty to a different crime. In its determination the court concluded that the fact that the return of an indictment to charge one with a crime is a constitutional right does not prevent its waiver, held that the petitioner's conduct by pleading guilty while represented by counsel constituted a waiver, and said that the petitioner is in no position to urge such issue as error inasmuch as ''he voluntarily joined in the procedure,'' i. e., ''if error exists he induced or invited it by his own conduct, and under such circumstances he cannot rely upon it to attack his conviction.'' In view of *Midling* v. *Perrini, supra,* however, we must observe that all of the Supreme Court's statements as to waiver are *obiter dictum,* though they necessarily indicate its thinking.

In any event, however, we must conclude from the various decisions of the Supreme Court, hereinbefore cited, that waiver of the right to object to the insufficiency of an affidavit (or indictment) for its failure to allege a vital or material element identifying and characterizing the crime attempted to be charged cannot be based on passive conduct of the defendant, or his counsel, but may be

based only on affirmative action showing an active participation in the creation of the situation bringing about the conviction—in the words of the Supreme Court in the *Stacy* case, *supra,* on "error * * * induced or invited * * * by his own conduct." Thus, where he actively participates and consents to the amendment of an affidavit as in *State* v. *Chrisman, supra,* or pleads guilty to a different crime than the one charged as in the *Stacy* case, *supra,* he has induced or invited error *by his own conduct,* but where the error has been created by the prosecution, by omitting a vital or material element of the crime attempted to be charged, and the most the defendant has done has been to enter his plea thereto, as in *State* v. *Potts* and in *Midling* v. *Perrini, supra,* the defendant's conduct is passive and it cannot be said that he induced or invited the error *by his own conduct* and thus waived the error.

We must conclude that the defendant here did not waive the insufficiency of the affidavit to state an offense, that he was entitled to first make objection to the same upon appeal, and that his conviction thereon, being voidable for such reason, must now be declared void and the defendant discharged.

*Judgment reversed.*

Cole, J., concurs.

Troop, J., dissenting. This appeal is from a finding of guilty, the trial court being the trier of the facts, and a judgment of conviction and sentence, of the Muncipal Court of Marion entered January 8, 1971. The appeal is upon questions of law.

Four assignments of error are offered in support of the appeal, the first of which is addressed to the arrest made by the officers which defendant claims to be constitutionally invalid. The uncontradicted evidence in this case, the defense having elected not to introduce any evidence, is that the sheriff's Lieutenant Shoemaker, and another deputy, approached a group of three boys and three girls,

sitting in a circle in the area of Sawyer Lake, and identified themselves as police officers, whereupon the defendant, Culp, jumped to his feet and threw a plastic bag into the water. The lieutenant walked into the water and recovered the bag. This testimony is confirmed by that of Officer Schneider.

Lieutenant Shoemaker believed the contents of the plastic bag to be marijuana and called cruisers, into which the six persons were placed. This is the only evidence shown in the transcript that might indicate an arrest. Such act occurred after the bag was retrieved and it was clearly warranted by the probable cause necessary in felony cases; more particularly, the record shows that the officers saw the bag in Culp's possession, which means that a misdemeanor was committed in the officers' presence.

The incident took place in a "public park," and with or without knowledge acquired from young informants, it was not improper for the officers to approach a group using the public park and identify themselves. Public areas are under the supervision of the sheriff's department and the users of a public park are subject to reasonable scrutiny.

More particularly, there was no pretrial motion to suppress the evidence as unlawfully obtained, and none was made during the trial in such manner as to make it necessary for the trial court to recess the trial and determine the constitutional question. (*State* v. *Young* [1966], 8 Ohio App. 2d 51.) And still further, no objection was made to the introduction of the state's Exhibit 1, a part of which was the evidence claimed to be unlawfully obtained during the course of the trial. Counsel for the defendant merely objected to the witness's "conclusion as to what is in it" when the exhibit was identified, and at the time of admission said:

"We object to the admission of all exhibits, Your Honor, not properly identified, no proper claim of evidence established."

No mention was made of an invasion of a constitutional right. Likewise there is no evidence of the search of

the defendant's person, all six persons present having voluntarily displayed means of identification, and Culp permitted the search of his car which, even if illegal, produced nothing offered in evidence.

Defendant complains that the affidavit filed against him was defective. It omitted, it is claimed, an essential element; i. e., "intent to produce hallucinations or illusions." It is noted that R. C. 3719.41, the statute under which defendant was charged, contains language as follows:

" * * * Possession or control of any hallucinogen specifically named in section 3719.40 of the Revised Code constitutes prima-facie evidence of a violation of this section * * * ."

R. C. 3719.40 specifically names the hallucinogens, including "cannabis, commonly known as marijuana." The affidavit charged "possession or control," in no sense alternative, the net result of either being the same, which is prima facie a violation. The statute provides that certain persons, pharmacists and others, may offer a defense and refute the prima facie case by reason of the exception in the statute. As is true of many criminal offenses intention may be inferred. Still further, defendant relies upon *State* v. *Ross* (1967), 12 Ohio St. 2d 37, for support. It deals with an "indictment" for a felony. Defendant attacked the first affidavit filed in this case by demurrer. The affidavit was not thereafter criticized until the case came here upon appeal. The rule is clear as to misdemeanor cases. In *State* v. *Walker* (1969), 20 Ohio App. 2d 179, the syllabus states that in the case of a prosecution for misdemeanors an affidavit may be amended " * * * at any time before, during, or after a trial in respect to any defect, imperfection, or omission in form or substance * * * provided no change is made in the name or identity of the crime charged."[*]

Defendant urges that the judgment of the trial court

---

[*]*State* v. *Simmans* (1970), 21 Ohio St. 2d 258; *State* v. *Glaros* (1960), 170 Ohio St. 471; *State* v. *Chrisman* (1966), 9 Ohio St. 2d 27; and *State* v. *Walker* (1969), 20 Ohio App. 2d 179.

is against the manifest weight of the evidence and contrary to law. Generally the weight of the evidence is for the trier of the facts and a reviewing court will not disturb the finding of the trial court unless the trier of the facts manifestly lost its way, or became confused, or responded to bias or prejudice. (3 Ohio Jurisprudence 2d 820, Appellate Review, Section 821.) The bulk of counsel's argument as to this assignment of error, however, is directed toward the establishment of the fact of a faulty chain of custody respecting state's Exhibit 1. Because of the emphasis given, and since it must be concluded that a chain of custody must be established, attention is directed to the record concerning this matter.

An annotation in 21 A. L. R. 2d 1216 provides an excellent review of the subject. It suggests the steps in the handling of the type of evidence with which we are concerned, beginning with the taking of the physical thing involved, followed by its keeping, transportation, delivery to the expert, and finally, production in court. These steps are reasonably clear in the instant case.

Lieutenant Shoemaker retrieved the packet from the pond, whence it had been thrown by Culp, put it in his left jacket pocket and buttoned the pocket, he himself having made a preliminary test of the contents. He personally put it in the top left drawer of his desk and locked the desk, noting that no one had access to it. Shoemaker personally packaged and mailed the bag and deposited it in the post office.

The package arrived at the Ohio bureau of criminal identification and investigation (hereafter referred to as BCI) and was opened by Thomas V. Nicholson. He described the package and contents and left no doubt that it was the one dropped in the post office by the sheriff's lieutenant. It was identified as belonging to the Dennis Culp case, numbered 3545, dated November 8, 1970, and submitted by Shoemaker. Shoemaker's number and initials were on the exhibit although he said he had not remembered the number 3545, but when his memory was refreshed he identified the distinguishing marks.

Finally, Lieutenant Shoemaker personally went to the

BCI and picked up the evidence and kept it in his possession until it was produced in court.

If there be a hiatus in the chain of custody, as is urged by defendant, it is the result of the sheriff's lieutenant not getting on the truck and riding with the mail from Marion to the BCI. It is nothing short of ridiculous to argue that the handling of the mails gives opportunity for tampering. A reasonable requirement for an unbroken chain of custody is satisfied by the procedure in the instant case, even to the point of rebutting any claim of access. Such a chain would unquestionably have satisfied the court in *Stewart* v. *Bd. of Liquor Control* (1960), 84 Ohio Law Abs. 7, in which case no evidence was introduced to show a chain of custody.

Defendant complains also that the state failed to prove the negative averment contained in the affidavit and relies upon the Court of Appeals decision in *State* v. *Dutton Drugs, Inc.* (1965), 3 Ohio App. 2d 118. The defendant was charged, in *Dutton,* with two misdemeanors; unlawfully selling certain capsules when not a registered pharmacist, and operating a drugstore without having in the store's employ a registered pharmacist. The negative averment was that he was not a pharmacist, and failed to employ one, in violation of a law requiring licenses. The very essence of the charge was "the being without," and the burden of proof was on the state to prove this basic situation.

In the *Dutton* decision the court relied upon several earlier decisions, among which is *Hale* v. *State* (1898), 58 Ohio St. 676, a felony case concerned with a defendant practicing medicine without a license. Paragraph 4 of the syllabus of *Hale* states the rule, as follows:

"Where an exception or proviso in a criminal statute is a part of the description of the offence, it must be negatived by averment in the indictment in order to fully state the offence; but when its effect is merely to except specified acts or persons from the operation of the general prohibitory words of the statute, the negative averment is unnecessary."

As the court puts it, at page 125 of *Dutton,* not being

a registered pharmacist "is the gist of the act denounced by law"; hence, the state must charge and prove this essential element of the offense.

In the case before this court, "possession or control," of marijuana, is the gist of the case, and if the defendant is not subject to the law because he is a registered pharmacist, or other, it becomes a defense to be advanced by the defendant.

An examination of the decisions upon which the court in *Dutton* relied provides illustrations of situations in which no negative averment is required. In *Billigheimer* v. *Ohio* (1877), 32 Ohio St. 435, a defendant was charged with performing common labor on Sunday. The statute provided an exception for one who celebrated Sunday on the seventh day of the week instead of the first. The court held that a negative averment was not necessary to the information for the reason that the provision was the basis for "a special plea in bar." A part of paragraph 2 of the syllabus reads as follows:

" * * * unless the matter of such proviso enters into and becomes a part of the description of the offense, or is a qualification of the language defining or creating it."

In *Seville* v. *State* (1892), 49 Ohio St. 117, involving a prize fight prohibited by a statute which also said it was not applicable to exercise in any public gymnasium or athletic club where permission from the sheriff was first obtained, again the court held that it was not necessary that the indictment contain a negative averment. State pure food laws were the subject of the review in *State* v. *Hutchinson* (1897), 55 Ohio St. 573. The statute said that it did "not apply to mixtures or compounds recognized as ordinary articles or ingredients of articles of food." It was held that a negative averment was not required in the affidavit.

Finally, note *Brinkman* v. *Drolesbaugh* (1918), 97 Ohio St. 171 a case in which a defendant was charged with a violation of a statute establishing certain limitations on the conduct of fishermen. The exception was as follows: "* * * but nothing herein shall prohibit an owner or person

having the owner's consent from taking or catching a fish by a trot line * * * ." The court held, approving and following *Hale, supra,* that the negative matter was not necessary to the affidavit filed, because it was "not essential to the legal sufficiency of the charge, nor to advise him of the 'nature of the accusation against him.' "

In this case the claimed negative averment is in the nature of "a special plea at bar." The gist of the offense is "possession or control." No negative matter is essential to the legal sufficiency of the charge nor to advise Culp of the nature of the accusation against him.

In the conclusion of the support for his appeal, defendant urges that the charge against him was faulty because it charged "possession or control" of an hallucinogen, a charge in the alternative. Defendant relies upon the decision in *State* v. *Fowler* (1963), 174 Ohio St. 362, to support his assignments of error. In *Fowler* the defendant was charged in an affidavit incorporating essentially the language of the statute as to the operating of a motor vehicle while under the influence of "intoxicating liquor, narcotic drugs or opiates." This, the court held, was in the alternative and remanded the cause for a new trial. Compare, *State* v. *Hopkins* (1971), 26 Ohio St. 2d 119.

The alternatives move to the essence of the offense charged. Intoxicating liquor, narcotics, and opiates are all distinct, and each, it may be, producing differing results on a given individual. The pertinent words of the statute were "possession or control"—The same words used in the affidavit concerned with here. These words are in no sense clearly distinct. On the contrary, common usage, as well as dictionary definition, indicates that possession means "taking into control." (See Webster's New Third International Dictionary [1966].) Note, also, that the *Fowler* decision strongly suggests that if there be bona fide confusion as to the meaning of the language used in an affidavit, it can and should be dispelled by the use of a request for a bill of particulars timely made. (See also *State* v. *Dinsio* [1964], 4 Ohio App. 2d 309.)

Appellant's assignments of error are not well stated.

54

For the reasons advanced, the judgment of the trial court should be affirmed.

GUERNSEY and COLE, JJ., concur as to the disposition of the first, third and fourth assignments of error.

TROOP, J., of the Tenth Appellate District, sitting by designation in the Third Appellate District.