The STATE of Ohio, Appellee,

v.

LITTEN, Appellant.

[Cite as *State v. Litten*, 174 Ohio App.3d 743, 2008-Ohio-313.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 89235.

Decided Jan. 31, 2008.

744

William D. Mason, Cuyahoga County Prosecuting Attorney, and William Leland, Assistant Prosecuting Attorney, for appellee.

Russell S. Bensing, for appellant.

---

CHRISTINE T. McMONAGLE, Judge.

{¶ 1} In May 2005, a confidential informant made a controlled buy of marijuana from defendant-appellant, Harold Litten, at Litten's North Olmsted home. Immediately following the controlled buy, police officers executed a search warrant on Litten's home and recovered firearms, ammunition, and drugs. The next day, in light of information found during the search, officers went to the home of Litten's father, in Cleveland. Litten's father told the officers that Litten would "occasionally stay upstairs" and signed a consent form permitting the police to search the upstairs of the home. After breaking the locks on the doors, the officers discovered a marijuana "grow room" on the third floor of the home. In a bedroom on the second floor, they recovered a semiautomatic .223–caliber rifle.

{¶ 2} Litten was charged in a multi-count indictment and subsequently found guilty of ten of 12 charged offenses. He now appeals. We reverse Litten's conviction and remand for a new trial, because Litten's Sixth Amendment right to counsel was violated. Additionally, we hold that the trial court erred in failing to rule on Litten's motions to suppress evidence prior to trial and by improperly combining the hearing on the motions with the trial.

{¶ 3} Litten was declared indigent at his arraignment, and a public defender, Anthony Kellon, was appointed to represent him. In the initial stages of the case, Litten filed numerous pro se motions. For that reason, much of the court's attention was initially focused on the issue of whether Litten would be representing himself. The trial judge held nine hearings on that and related issues. At a hearing on May 1, 2006, Litten expressed a desire to proceed pro se, with him assuming the role of defending himself and his appointed counsel serving only in an advisory capacity:

{¶ 4} "THE COURT: [Y]ou want Mr. Kellon to sit second chair and advise you with respect to this matter?

{¶ 5} "THE DEFENDANT: Yes, sir. I will make my own decision, file my own paperwork, and Mr. Kellon can be in a consulting fashion."

{¶ 6} The prosecutor reminded the judge that for Litten to effectively waive his right to counsel, the court was required to advise him of the risks of self-representation and ensure that he was making a knowing, intelligent, and voluntary waiver of counsel. See *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 40; *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309. The trial court agreed and indicated that the issue would be resolved at the next hearing, scheduled for May 30, 2006.

{¶ 7} That hearing did not occur. Instead, at a hearing on June 5, 2006, the trial judge became so concerned by Litten's conduct—for example, his assertion that various provisions of the Uniform Commercial Code were applicable to his case, or that the Rules of Criminal Procedure were somehow part of admiralty jurisdiction—that he ordered Litten to undergo a competency evaluation.

{¶ 8} At a hearing held after the evaluation was completed, the court announced that Litten had been adjudged competent, and Litten indicated that he was going to represent himself at trial, which was set for September 19, 2006.

{¶ 9} On the morning of trial, prior to the commencement of trial, the trial judge painstakingly reviewed with Litten the charges he faced and the ramifications of representing himself. Litten acknowledged that he was only "slightly" familiar with the Rules of Criminal Procedure and that he did not "know much" about court guidelines and procedures. Additionally, he gave nonsensical responses to many of the court's questions. For example, he insisted that he was

not the person named in the indictment, because his name was listed in all capital letters on the indictment, which, he stated, "is not my Christian Appalachian name which is in capital and small letters." Additionally, he insisted that because he was not the defendant, he did not need to know about any defenses he could assert to the charges. At the conclusion of the proceedings, the court presented Litten with a form waiving his right to counsel. Litten expressed a desire to "look it over and consider it" with Kellon, so the court recessed the hearing until 1:00 p.m.

{¶ 10} When the hearing resumed, Litten informed the judge that he would not waive his right to counsel:

{¶ 11} "THE COURT: Mr. Litten, stop. It's a clear question. Are you going to sign the document that I have given to you, after you have had an hour to review it with Mr. Kellon, or are you going to allow Mr. Kellon to represent you?

{¶ 12} "THE DEFENDANT: I will not sign any document to give up my rights.

{¶ 13} "THE COURT: * * * With that being said, it will be noted for the record that Mr. Litten will not sign, nor will he waive his right to counsel, nor will he contract to waive his right to counsel, and that being said, Mr. Kellon, you will remain his attorney of record. We'll proceed accordingly."

{¶ 14} On October 4, 2006, the court reconvened and the judge explained his reasons for recusing himself. With respect to Litten's pro se motions, the judge confirmed that Litten was represented by counsel and that the state of Ohio would disregard any motions not filed by that counsel:

{¶ 15} "So I know that your [pro se] motions are part of the record. I know that there's been a response from the State of Ohio. That response has been filed with the anticipation that you would then be representing yourself. And I found that not to be something that you were able to do with respect to signing or waiving and knowledgeably waiving your right to a lawyer and having someone sit second chair or stand by so *Mr. Kellon is still your lawyer until a judge makes a ruling otherwise.*" (Emphasis added.)

{¶ 16} No such ruling ever occurred, nor was a waiver of counsel ever executed and docketed. When the trial began in front of a different judge on December 6, 2006, there was no mention of a waiver of counsel. Nevertheless, Kellon conducted voir dire and objected on numerous occasions during trial, and Litten gave opening and closing statements, cross-examined all the witnesses, and raised various objections during the trial.

{¶ 17} In criminal prosecutions, the right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and by Section 10,

Article I of the Ohio Constitution. The defendant may dispense with this right, however, and represent himself if he " 'knowingly, intelligently, and voluntarily waives his right to counsel.' " *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 26, quoting Crim.R. 44. In "serious offense" cases, the waiver of counsel must be in writing. Id. at ¶ 27, citing Crim.R. 44(C).

{¶ 18} Once the right to counsel is properly waived, trial courts may appoint standby counsel to " 'aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.' " Id. at ¶ 28, quoting *Faretta v. California* (1975), 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562, fn. 46.

{¶ 19} Nevertheless, a defendant does not have a right to hybrid representation, where "the defendant and counsel act as co-counsel, sharing responsibilities in preparing and conducting trial." Id. at ¶ 29. Although a defendant has a right to representation by counsel or to proceed pro se with the assistance of standby counsel, "these two rights are independent of each other and may not be asserted simultaneously." Id. at ¶ 32, citing *Parren v. State* (1987), 309 Md. 260, 269, 523 A.2d 597.

{¶ 20} The record in this case is clear: after he was advised of the perils of self-representation, Litten expressly refused to sign a written waiver and, therefore, the court concluded that he did not waive his right to counsel and would continue to be represented by Kellon. Nevertheless, although he did not waive his right to counsel, Litten went to trial as his own co-counsel, participating in the hybrid representation expressly forbidden by the Ohio Supreme Court.

{¶ 21} We are not persuaded by the state's argument that in light of his many assertions that he wanted to represent himself, Litten's failure to sign a written waiver is harmless error. In *Martin*, the Ohio Supreme Court held that although literal compliance with Crim.R. 44(C) is the "preferred practice," where a trial court substantially complies with the rule, and it is apparent the defendant implicitly waived his right to counsel, the failure to file a written waiver is harmless. Id. at ¶ 39.

{¶ 22} Litten's statements about representing himself, however, were all made before the court advised him of his right to counsel and the perils of self-representation and then inquired of him to determine whether he was knowingly, voluntarily, and intelligently waiving that right. After the court's advisement and questioning, Litten specifically refused to sign the written waiver of counsel. A valid waiver cannot be implied over the express refusal of the defendant to sign the written waiver form and the trial court's express finding that the defendant has not waived counsel.

{¶ 23} Moreover, even if we were to find that Litten waived his right to counsel, it is apparent that Kellon did not serve solely in an advisory capacity to Litten: the trial here resulted in exactly the type of hybrid representation prohibited by *Martin*. As Litten aptly points out in his brief, "perhaps the best indication of the muddled state of the proceedings is that when a juror took ill during trial, and the court discussed the decision to remove her, Kellon waived Litten's right to be present at that discussion!"

{¶ 24} What happened here is that after exhaustive efforts by the first trial judge to explain Litten's right to counsel, Litten expressly refused to waive it, and the trial judge expressly concluded, on the record, that he had not waived and that trial would proceed with Kellon acting as Litten's attorney. Without any further inquiry by the second trial judge, or any further action by Litten, he went to trial essentially as his own co-counsel, with predictable results. His acquiescence in that does not overcome a record that does not show that he implicitly waived his right to counsel and, in fact, shows that he expressly refused to do so.

{¶ 25} Appellant's first assignment of error is sustained. His convictions are reversed, and the case is remanded for a new trial.

{¶ 26} We also address Litten's second assignment of error, because the same issue may arise upon remand, and, further, to avoid any contention that the suppression issue is somehow res judicata and not to be revisited in a second hearing.

{¶ 27} Over a month prior to trial, the defense filed two motions to suppress the evidence seized in the search of Litten's and his father's homes. The trial court subsequently filed an entry stating that the motions to suppress would be heard during trial. At the conclusion of the presentation of evidence, the trial court denied both motions.

{¶ 28} Crim.R. 12(C)(3) provides that a motion to suppress evidence must be filed prior to trial. Under Crim.R. 12(F), such a motion "shall be determined before trial." As noted by the court in *State v. Weirich*, (Oct. 5, 1984), 6th Dist. No. WMS–84–8, 1984 WL 14382, "the plain language of Crim.R. 12[F] does not vest the trial court with any discretion as to when such motions are to be determined."

{¶ 29} The problems with hearing motions to suppress in the trial are readily apparent:

{¶ 30} "In order to illustrate the inherent danger of unnecessarily delaying a hearing on a motion to suppress, suppose that the present case was heard by a jury. Could the prosecution fairly introduce illegal evidence against the defendant and then withdraw it after the trial is completed? Under such circum-

stances, the suppression of the evidence at the conclusion of the trial would obviously be no more than an empty gesture. * * * The failure to conduct a hearing on the motions to suppress prior to the trial, coupled with the subsequent disallowal of any independent hearing upon such motions, effectively denied the defendant the right to refute any of the testimony presented by the prosecution upon the issues surrounding the arrest, the search, and probable cause, and thus prevented the defendant from challenging the constitutional validity of the evidence used to establish his guilt." *State v. Young*, 8 Ohio App.2d 51, 53–54, 37 O.O.2d 53, 220 N.E.2d 704. See also *State v. Dyer* (Sept. 6, 1988), 5th Dist. No. CA–7487, 1988 WL 94024; *State v. Wilmonth* (Dec. 16, 1981), 12th Dist. No. 440.

{¶ 31} Litten was entitled to a meaningful opportunity to present his argument that the police searches in this case violated his constitutional rights. The method employed by the trial court, in hearing the motions to suppress during the trial, denied him that opportunity.

{¶ 32} Appellant's second assignment of error is sustained.

{¶ 33} Because this case is remanded for a suppression hearing and, if necessary, a new trial, appellant's other assignments of error are moot and we need not address them. See App.R. 12(A)(1)(c).

Judgment reversed
and cause remanded.

SWEENEY, A.J., and BOYLE, J., concur.