OPINION OF THE COURT BY RECKTENWALD, C.J.[1]
*118 I. INTRODUCTION
This case requires us to consider the advisements that a trial court provided a defendant with regard to the right to testify, when the court consolidated a suppression motion with the trial on the merits.
Davis Yen Hoy Chang (Chang) was charged with Operating a Vehicle Under the Influence of an Intoxicant (OVUII).[2] Chang filed a motion to suppress statements that he allegedly made to the police officer who arrested him. The District Court of the First Circuit consolidated the hearing on Chang's motion to suppress with his bench trial, and provided Chang with several advisements about his right to testify. Chang declined to testify. The district court granted the suppression motion in part, but found Chang guilty. After unsuccessfully appealing to the Intermediate Court of Appeals (ICA), Chang timely filed an application for writ of certiorari with this court.
We conclude that the district court erroneously advised Chang with regard to his right to testify in the context of a consolidated suppression hearing and trial. Accordingly, we vacate his conviction, and remand the case for further proceedings.
II. BACKGROUND
A. District Court Proceedings
1. Preliminary Matters
Chang was charged by complaint with OVUII. Chang filed motions to suppress all verbal and non-verbal statements that he made after he was pulled over by Honolulu Police Department Officer Jared Spiker (Officer Spiker) and prior to his arrest, including his performance on the standardized field sobriety test (SFST).
2. Consolidated Suppression Hearing and Bench Trial
At the outset of the proceeding, the court asked defense counsel if counsel was going to consolidate the hearing on the motion to suppress with the bench trial. The district court[3] engaged Chang as follows:
The Court: Mr. Chang, based on what your attorney is saying, it's my understanding that we're going to consolidate this motion with the trial[.] [I]s that your understanding as well?
Chang: Correct.
The Court: And that's what you want to do today?
Chang: Correct.
The Court: Okay. So then, since we're ultimately doing a trial, I'm going to go through my [ ] trial questions.
After the district court asked Chang preliminary questions regarding a proposed plea agreement, Chang pled not guilty. The district court then accepted the parties' stipulations, for the purposes of both the suppression motion and trial, that Officer Spiker was trained, experienced, and qualified to administer and evaluate SFSTs; would testify only as a lay witness; would not testify about the horizontal gaze nystagmus (HGN) portion of the SFST; and would not make legal conclusions as to whether Chang had passed or failed any portions of the SFST.
*119 12 The district court informed Chang of his right to testify and his right not to testify at trial[4] as follows:
The Court: [S]ince we're doing this as a ... consolidated trial, I have to inform you, Mr. Chang, you have the constitutional right to testify in your own defense. Do you understand that?
Chang: Yes, I do.
The Court: Okay. Although you should consult with your attorney regarding the decision to testify, it is your decision and no one can prevent you from testifying should you ... choose to do so; do you understand?
Chang: I do.
The Court: Okay. If you decide to testify, the prosecutor will be allowed to cross-examine you; do you understand?
Chang: I do understand that.
The Court: Okay. You also have a constitutional right not to testify and to remain silent. Do you understand that as well?
Chang: Yes.
The Court: Okay. If you choose not to testify, the court cannot hold your silence against you in deciding your case; do you understand?
Chang: Yes.
....
The Court: Do you have any questions about what I have explained?
Chang: No, I do not.
The State called Officer Spiker as its sole witness for the purposes of both the suppression motion and the trial.
a. Officer Spiker's Testimony
Officer Spiker testified that at approximately 1:10 a.m. on November 13, 2016, he noticed Chang driving without illuminated headlights. Officer Spiker observed Chang make an illegal left turn at an intersection with "at least two signs that [said] no left turn." Officer Spiker followed Chang and pulled him over.
Officer Spiker testified that as soon as he began conversing with Chang, who had been driving alone, he smelled a "strong odor of alcohol" coming from Chang's breath. He also noticed that Chang's eyes were "red, watery, and glassy," that Chang's face was flushed, and that Chang's speech was slurred.
Officer Spiker asked for Chang's driver's license, registration, and insurance, which Chang provided without difficulty or delay. Officer Spiker informed Chang that he had been pulled over because of his driving infractions and offered Chang an SFST.[5] At Officer Spiker's request, Chang exited his vehicle without difficulty. Officer Spiker testified that at this point, Chang "was not free to leave."
Officer Spiker testified that Chang agreed to participate in the SFST and stated "that he had [had] some drinks earlier." After Chang answered "no" to each of the medical rule-out questions posed by Officer Spiker, Officer Spiker administered the SFST. The SFST consisted of the HGN test, the walk-and-turn test, and the one-leg-stand test. Officer Spiker testified that Chang did not perform the walk-and-turn test or the one-leg-stand test as instructed. With respect to the walk-and-turn test, Officer Spiker noted that *120 Chang started the test before being instructed to do so; missed numerous heel-to-toe steps; stepped off the line three times; and turned the wrong way without the required pivot. With respect to the one-leg-stand test, Officer Spiker noted that Chang's right foot touched the ground multiple times during the balancing sets; Chang did not look at his foot throughout the sets despite instructions to do so; Chang skipped numbers as he counted; and Chang was "swaying noticeably."
Officer Spiker further testified that throughout the SFST, Chang was argumentative, interrupted him, and asked him at least five times why he pulled Chang over, despite his repeated explanations. Officer Spiker also testified that, at some point during the SFST, Chang was offered a preliminary alcohol screening device test (PAS), but refused the PAS because he said "he didn't trust it."
Officer Spiker testified that he arrested Chang for OVUII, in light of the totality of the circumstances. He explained that he considers the "totality of the circumstances" when deciding whether to arrest someone for OVUII, including the amount of traffic violations observed, indicia of intoxication, and an individual's demeanor, SFST performance, and abilities to cooperate and follow instructions. Officer Spiker also testified that he did not at any point advise Chang regarding the right to remain silent.
b. Hearing on the Motion to Suppress
3 After Officer Spiker testified, the district court addressed Chang's motion to suppress. The following discussion took place, wherein defense counsel initially indicated that Chang intended to testify for purposes of the suppression hearing:
The Court: Why don't we do the argument on the motion ... first, okay? .... [W]ell, even before then, did you want to have anyone [ ] testify in regard to the motion? ... [I]f you're going to have [Chang] testify in regard to the motion, I need to know[.]
....
Wait. This is going to get a little confusing since we're doing the motion combined with the trial. So I'm going to
Tachibana [6 ] him a second time - okay. Wait. So the State has no further witnesses. You're saying for purposes of this motion you may have a witness?
Defense: Only [Chang]. Only for purposes of this motion.
(Emphasis added).
The district court proceeded to advise Chang that any testimony offered at the suppression hearing would be considered for the purposes of trial:
The Court: [S]ince we're doing it as a consolidation we kind of have to do it together so I'm going to Tachibana him[.] ... [W]e'll do that but I'm feeling like I'm skipping steps because you still didn't make your motion and we still didn't - okay. Let me just Tachibana him because if you're going to have him testify for purposes of the motion we gotta have that on the - okay.
The State: I'm sorry, your honor, to interfere but because this was consolidated, [ ] I would assume if he testifies it's going to be [ ] part of the trial.
The Court: [T]hat's the problem is if [Chang]'s going to testify it's also - since we're consolidating it, it's part of the trial as well .
Defense: Right. And we can stipulate that we'll limit the questioning to the motion issue because I'm not having him go into particular details. And so sometimes there'll be a stipulation with the State *121 that we'll just limit the questioning to the motion and -
The Court: See, I don't know how we can do that since we're consolidating it.
Defense: Well, that's more for efficiency purposes[.] ... If we consolidate, it just means we don't want to have a separate hearing on the motions and a trial another day, so for efficiency purposes ... we're consolidating everything so we don't have to have multiple hearings on multiple dates.
The Court: Right. But what he testifies to I'm going to listen to it and decide in regard to the trial as well. You see what I mean?
....
So, ... even if you're limiting it to just the motion, whatever he gets up on the stand to [say], I'm going to actually have to decide on it for the trial .
Defense: Understood. But there's an understanding with the State that we're limiting the questioning to the motion as ... it relates to the motion[.] ... [T]hat's how ... historically we've done it, we limit the question to the motion, we're not going to go into, I guess, drinking alcohol, that sort of thing, or if it existed or not. I'm just focusing on the interaction between him and the officer as to the ordering out, the consent, [the] voluntariness of [ ] the [SFST] and any statements, you know.
The Court: Okay. But the court's going to listen to all of that [testimony] and use all of that in determining for the trial [Chang's] guilt or innocence as well .
....
Because if [Chang] doesn't want to testify, I want to make sure he has that right not to testify. But if he testifies for purposes of the motion, then we're kind of stuck at that point since we're consolidating the motion and the trial , so I can't unhear what I've heard. I mean, I guess ... I technically could but it'd be ...
Defense: Hard.
....
The Court: I mean, but it's your choice. So if you want to, you can put [Chang] on, but I'm just trying to say, since we're doing this as a consolidated hearing, whatever he's saying in the motion, technically since we're consolidating it, I don't know how - - I can't use that for the trial .
....
The State: Or, your honor, I know the court already kind of consolidated the hearing and the trial but if defense is going to have his witness testify for the purposes of the motion, we don't necessarily have an objection as to separating it for trial purposes.
....
So if that's what defense counsel wants to do, [ ] maybe there was a ... misunderstanding.
....
The Court: So if you want to put [Chang] on just for purposes of the motion, so then technically I guess we're not consolidating, okay, so we have to go backwards. [Be]cause if we're not going to consolidate it, I mean, we're consolidating [Officer Spiker's] portion of the testimony but not [Chang's] portion of the testimony because he always has the right to remain silent for trial.
Defense: Correct.
The Court: Okay. And if there is a separate motion and the [ ] trial, like I said, I can put [ ] aside whatever [Chang] said, but since it was the agreement to consolidate, then I couldn't. So if you want to do the separate motion now and keep it separate and then do the trial portion in regard to your client, it's a little strange for me, but I can do that, if that's what you want to do.
(Emphases added).
The district court then recessed so that Chang could discuss with defense counsel whether he would testify on his motion to suppress and bifurcate the hearing on the motion from the trial. After reconvening, however, the district court attempted to correct its prior statements about Chang's inability *122 to testify solely for the purposes of the motion:
The Court: So I just want to make everything clear [ ] [be]cause you threw me for a loop, Mr. Lewis, saying that [Chang] wanted to testify [for purposes of the motion to suppress]. It's very rare that it happens in a motion to suppress so I had to rethink everything, since it was a consolidated hearing.
[J]ust so that we're clear, if [Chang] wants to testify for the motion to suppress, he has that right, [ ] but I'd have to [ ] bifurcate, instead of consolidating it[.] ... So he has the right to testify for the motion. I ... won't Tachibana him. I can listen to him testify for the motion and then I can rule[.]
....
[I]f you consolidate the testimony of [Officer Spiker], then at that point if you wanted to make any motions, you can make any motions at that point and then [Chang] could decide if he wants to testify for purposes of trial.
....
Okay? And then any testimony that [Chang] made for purposes of the motion the court, only if he wanted to, would the court then decide, you know, if he wants to testify, then we can decide whether or not ... what he testified to earlier in the motion would be consolidated or not or if he wanted to add to it or things like that. Okay. So it's two separate rights. So I don't want him to think that he doesn't have that right.
....
So, Mr. Chang, like I said, I know it was a little confusing, and I might have been confusing to you, so I want to make sure that it's absolutely clear to you. Although we agreed to consolidate ... the motion and the trial ..., you have a right to testify at the motion as well as a right to testify at trial.
Chang: Okay.
The Court: That whole right to remain silent, that goes for the trial portion of it. ... But if you wanted to testify for the motion, it's your right. We can figure out how to work the logistics of it in our own way. And if you testify at the motion, it doesn't necessarily mean that what you testify in the motion I'm automatically going to use for the trial.
Chang: Okay.
The Court: If you didn't want to, you know, whatever you said in the motion, if you didn't want it for the trial, I would just have to take it out of my mind and put it on the side. Okay?
Chang: Okay.
The Court: So that's your right. So I want to make sure you clearly understand your rights. Okay?
Chang: Yes, your honor.
(Emphases added).
Chang ultimately declined to testify for purposes of the suppression hearing:
The Court: So now, knowing that, ... are you going to be testifying in regard to the motion?
Defense: No.
Chang: No. No, I will not, your honor.
The Court: Okay. And that's your choice not to?
Chang: Correct.
With regard to the motion, Chang sought to exclude from evidence any questions that he asked Officer Spiker regarding why he had been pulled over, any mistakes that he made while counting, and his performance on the SFST. He argued that any statements that he made after being pulled over required suppression in light of Officer Spiker's testimony that he was "not free to leave" and Officer Spiker's failure to advise him of his right to remain silent. The State argued that Officer Spiker's traffic stop was noncustodial due to its brevity and non-coercive nature, and as such, Officer Spiker was not required to advise Chang of his right to remain silent.
The district court granted Chang's motion to suppress with regard to his verbal statements, pursuant to State v. Tsujimura , 140 Hawai'i 299, 400 P.3d 500 (2017). However, it denied Chang's motion to suppress with regard to Officer Spiker's observations of Chang's "physical action" during the SFST because Chang "voluntarily agreed to do the *123 [SFST]." The defense moved to dismiss Chang's charge on the ground of insufficient evidence, but the district court denied the motion, considering the evidence "in the light most favorable to the State."
c. The Trial
The district court conducted a Tachibana colloquy, explaining to Chang that: he had the constitutional right to testify or not to testify at trial; no one could prevent him from doing so; if he chose to testify, he would be subject to cross-examination; and if he chose to remain silent, his silence could not be held against him. Chang confirmed that he understood these rights and declined to testify.
In its closing argument, the State argued that Officer Spiker's testimony regarding Chang's traffic violations and SFST performance was sufficient to carry its burden of proof that Chang committed OVUII. In response, the defense argued that Chang's traffic violations were not "indicative of [alcohol] impairment"; Chang was able to produce the requested documents to Officer Spiker without difficulty; and even though Chang's SFST performance was "not perfect," Officer Spiker's testimony did not constitute a sufficient basis for the district court to find that Chang committed OVUII.
The district court found Officer Spiker's testimony to be credible and explained that "the only question [was] whether or not [Chang, while] operating [a] vehicle[,] [consumed alcohol] in an amount sufficient to impair his normal mental faculties or ability to care for the person and guard against casualty." The district court found Chang guilty of OVUII and sentenced him to a $150 fine and other requirements.
B. Appeal to the ICA
On appeal to the ICA, Chang contended that: (1) under Tsujimura , the district court erred in denying Chang's motion to suppress evidence of his SFST performance; (2) his conviction was not supported by substantial evidence; (3) his waivers of his rights to testify for the purposes of the suppression motion and trial were not knowing, intelligent, and voluntary; and (4) Chang's attorney provided ineffective assistance of counsel. The ICA rejected Chang's arguments and affirmed his conviction.
First, the ICA held that the district court had appropriately considered Chang's SFST performance, given this court's holding in State v. Wyatt that routine traffic stops do not constitute "custodial interrogation." 67 Haw. 293, 687 P.2d 544 (1984). The ICA rejected Chang's reliance on Tsujimura , explaining that in Tsujimura , "the issue was whether the defendant's pre-arrest silence could be used against him substantively as an implication of guilt, [and] not whether[, as here,] non-custodial, pre-arrest statements made by a defendant [could] be used as evidence." Further, citing to State v. Kaleohano , 99 Hawai'i 370, 376, 56 P.3d 138, 144 (2002), the ICA held that "Chang was not in custody merely by virtue of being pulled over during a traffic stop[,]" and that Chang was not "subjected to custodial interrogation" at any point prior to, or during, the SFST. The ICA determined that Miranda warnings - including an advisement of Chang's right to remain silent - were not necessary, and Chang's right against self-incrimination was not violated, because the totality of the circumstances reflected that Chang was not in custody. In light of this conclusion, and the district court's finding that Officer Spiker was a credible witness, the ICA held that there was sufficient evidence to support Chang's conviction.
Second, the ICA concluded that Chang knowingly, intelligently, and voluntarily waived his rights to testify for purposes of both his motion and trial. While acknowledging that the district court "initial[ly] misstate[d] ... the implications of consolidating the hearing on the motion to suppress with the trial[,]" the ICA noted that the district court later clarified that Chang "could choose whether his testimony for the motion to suppress would be used for the purposes of trial." Because the district court "remedied its misstatements" by stating that it would consider Chang's testimony for the motion to suppress separately, granted a recess so that Chang could confer with defense counsel, and reiterated its corrected position, and because Chang ultimately "indicated that he understood"
*124 his rights, the ICA could not "conclude that Chang's rights were violated by the [d]istrict [c]ourt's initial misstatement."
The ICA also rejected Chang's argument that his waiver of the right to testify at trial was "irreparably compromised by the [district] court's misapprehension that it could not hold a consolidated hearing and trial without holding Chang's testimony on the motion against him." The ICA explained that any confusion regarding whether the district court could consider Chang's testimony on the suppression motion for purposes of the trial "was irrelevant to Chang's subsequent decision to waive his right to testify at trial." As such, Chang's waiver of the right to testify at trial was knowing, intelligent, and voluntary.
Finally, the ICA rejected Chang's argument that his attorney provided ineffective assistance of counsel. The ICA noted that "there [was] nothing in the record to support Chang's assertions concerning what his counsel did or did not advise him." Further, the ICA determined that Chang's claim was without merit, as "the [d]istrict [c]ourt itself advised Chang that he could choose to testify only for the purpose of the motion to suppress[ ] and Chang acknowledged that he understood this advisement, but that he did not want to testify."
III. STANDARDS OF REVIEW
A. Constitutional Law
45 Appellate courts answer "questions of constitutional law by exercising [their] own independent judgment based on the facts of the case. Thus, [this court reviews] questions of constitutional law under the 'right/wrong' standard." State v. Fields , 115 Hawai'i 503, 511, 168 P.3d 955, 963 (2007) (internal quotation marks, citations, and ellipses omitted).
B. Sufficiency of the Evidence
678910 We have long held that evidence adduced in the trial
court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.
State v. Matavale , 115 Hawai'i 149, 157-58, 166 P.3d 322, 330-31 (2007).
Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.
State v. Batson , 73 Haw. 236, 248-49, 831 P.2d 924, 931 (1992) (internal quotation marks and citations omitted).
IV. DISCUSSION
In his application for writ of certiorari, Chang asserts the same arguments that he raised on appeal. The dispositive issue, however, is whether Chang knowingly, intelligently, and voluntarily waived his right to testify for purposes of his suppression motion.[7]
11 As set forth below, we hold that the district court erroneously advised Chang concerning his right to testify for the purposes of the suppression motion by suggesting that Chang's testimony on the motion could be used as evidence of his guilt or innocence at trial. Although the district court attempted to correct its misstatements on this matter, it failed to do so adequately. Accordingly, we cannot conclude that Chang validly waived his right to testify.
*125 Hawai'i Rules of Penal Procedure (HRPP) Rule 12(e) provides:
A motion made before trial shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue or until after verdict; provided that a motion to suppress made before trial shall be determined before trial. Where factual issues are involved in determining a motion, the court shall state its essential findings on the records.
HRPP Rule 12(e) (2007).
We previously held, however, that pre-trial suppression hearings and trials could be consolidated, provided that the parties agreed to do so on the record. In State v. Doyle , the defendant did not object to the consolidation of her suppression hearing and trial. 64 Haw. 229, 231 n.3, 638 P.2d 332, 334 n.3 (1981). On appeal, this court rejected the defendant's challenge to the consolidation, holding that:
12 [W]here the trial court at a bench trial expressly
advises the parties, for the record, of its intention to hear the motion and the merits contemporaneously[,] and no objection is voiced by either party to the proposed procedure, the trial court may then proceed to hear the issues contemporaneously. The trial court should, however, enter its ruling on the motion to suppress before finally determining the merits of the charge against the defendant. Moreover, we remind the trial courts that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."
Id. at 231, 638 P.2d at 334 (citations and footnotes omitted).
In State v. Thomas , "we remind[ed] the lower courts that Doyle require[d] an express statement and agreement by the parties, on the record, where the court intend[ed] to hear testimony on the motion and merits contemporaneously." 72 Haw. 48, 54, 805 P.2d 1212, 1214 (1991).
13 Thus, Doyle and Thomas authorized the consolidation of proceedings when the trial court did so expressly and the parties agreed to such consolidation, which was the case here.[8] The district court, however, was nevertheless required to accurately advise Chang of the implications of testifying in the unique context of a consolidated proceeding. Here, the district court's initial advisements on the subject were erroneous and its subsequent attempts to correct its error were insufficient.
As noted above, the district court initially advised Chang that if he chose to testify for purposes of the suppression hearing, his testimony could be used against him at trial:
The Court: [T]hat's the problem is if [Chang]'s going to testify it's also - since we're consolidating it, it's part of the trial as well.
....
[W]hat [Chang] testifies to [in the suppression hearing,] I'm going to listen to it and decide in regard to the trial as well. You see what I mean?
....
So, I mean, even if you're limiting it to just the motion, whatever he gets up on the stand to [say], I'm going to actually have to decide on it for the trial.
....
[T]he court's going to listen to all of that [testimony] and use all of that in determining for the trial [Chang's] guilt or innocence as well.
....
[I]f [Chang] testifies for purposes of the motion, then we're kind of stuck at that point since we're consolidating the motion and the trial, so I can't unhear what I've heard.
....
[S]ince we're doing this as a consolidated hearing, whatever [Chang's] saying in the motion, technically since we're consolidating it, I don't know how [ ] I can't use that for the trial.
14 These statements by the court were in error. See, e.g. , Simmons v. United States , 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In Simmons , the defendant testified *126 at a suppression hearing with regard to whether he was the owner of items that were found in a suitcase during a search that he contended was illegal. Id. at 389, 88 S.Ct. 967. The trial court allowed that testimony to be used against the defendant at trial and the defendant was ultimately convicted of robbery. Id. The United States Supreme Court reversed the conviction, noting:
In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.
Id. at 394, 88 S.Ct. 967.
Thus, pursuant to Simmons , Chang had the right to testify for the purpose of his motion to suppress without having that testimony used against him at trial. It was essential that Chang be informed of those rights in order to ensure that his decision whether to testify at the suppression hearing was knowingly and intelligently made.
1516 Under Tachibana and its progeny, trial courts must engage in an on-the-record colloquy with a defendant, explaining to the defendant the right to testify and the right not to testify. 79 Hawai'i at 236, 900 P.2d at 1303. The purpose of the colloquy is to ensure that any waiver of these rights is knowing, intelligent, and voluntary. Id. As we have explained, "[a] defendant's understanding of the right to testify or not is fundamental to a fair trial[,]" and trial courts have a "serious and weighty responsibility" to determine whether a waiver of those rights is knowing and voluntary. State v. Monteil , 134 Hawai'i 361, 371, 341 P.3d 567, 577 (2014) (citing Tachibana , 79 Hawai'i at 233, 900 P.2d at 1300 ). Furthermore, "[i]n conducting a colloquy, the trial court must be careful not to influence the defendant's decision whether or not to testify." Id. at 370, 341 P.3d at 576 (citation omitted).
17"In determining whether a waiver of the right to testify was voluntarily and intelligently made, this court looks to the totality of the facts and circumstances of each particular case." State v. Celestine , 142 Hawai'i 165, 171, 415 P.3d 907, 913 (2018) (citation omitted). Under the totality of the circumstances here, it is clear that the district court erred in conducting its pre-trial advisements, by initially suggesting that Chang's testimony on the suppression motion would be considered by the district court for purposes of the trial.
Although it appears that the district court recognized its error and attempted to correct it, we conclude that the district court's efforts did not adequately dispel the confusion created by the court's prior misstatements. Significantly, the district court incorrectly implied that it had discretion to consider Chang's suppression hearing testimony at trial by stating, "if you testify at the motion, it doesn't necessarily mean that what you testify in the motion I'm automatically going to use for the trial." (Emphases added). In fact, as discussed above, the district court would have been precluded from considering Chang's suppression hearing testimony absent Chang's consent. Simmons , 390 U.S. at 393-94, 88 S.Ct. 967.
Considering all these circumstances, we cannot conclude that Chang knowingly, intelligently, and voluntarily waived his right to testify for the purposes of the pre-trial suppression hearing. Accordingly, his conviction must be vacated.
V. CONCLUSION
We vacate the ICA's October 3, 2018 Judgment on Appeal and the District Court of the First Circuit's August 25, 2017 Notice of Entry of Judgment and/or Order and Plea/Judgment, and remand the case for further proceedings.
OPINION OF THE COURT BY POLLACK, J.
The outcome of a criminal case may turn on the ruling on a pretrial motion to suppress. Such a decision may determine, for example, whether there was reasonable suspicion for an investigatory stop, probable cause to effect a search or seizure, or proper *127 warnings given before eliciting an inculpatory statement. Key evidence may be suppressed as a result of these evaluations, effectively making the ruling determinative of whether the defendant is convicted of the charged offense at trial. Because of the importance of rulings on suppression motions in the prosecution of a case, they are often the subject of appeals. The State, however, is statutorily authorized to appeal only a pretrial order granting a suppression motion.
Needless to say, a court cannot issue a pretrial order on a motion to suppress if it waits until trial to hold a hearing on the motion. The Hawai'i Rules of Penal Procedure (HRPP) thus require that a trial court rule on motions to suppress before the trial begins in order to ensure that the State does not lose its right to appeal suppression rulings. Despite this clear imperative, our existing precedent permits a trial court to hold a hearing for a motion to suppress simultaneously with a trial as long as the defendant and the State agree to the arrangement.
While we do not overturn our precedents lightly, the consolidation procedure is contrary to the express language of the HRPP and infringes on the State's right to appeal an adverse ruling on a suppression motion. Additionally, our precedents upholding consolidation have been rendered procedurally problematic by subsequent developments in our caselaw, and the process now creates significant administrative complications. We thus hold, prospectively, that trial courts may not consolidate a motion to suppress hearing with a trial.
I. BACKGROUND
Defendant Davis Yen Hoy Chang was charged in the District Court of the First Circuit (district court) on November 28, 2016, with operating a vehicle under the influence of an intoxicant (OVUII) pursuant to Hawai'i Revised Statutes (HRS) § 291E-61(a)(1).[1] Before trial, Chang filed a motion to suppress seeking to exclude "all evidence obtained after the traffic stop" including "the Standardized Field Sobriety Test," and "any statements made while in custody" because his detention was unlawful under article I, sections 7 and 10 of the Hawai'i Constitution.[2]
On the trial date, and with the agreement of the State and Chang, the district court allowed Chang's motion to suppress to be heard simultaneously with his bench trial. After the State rested its case-in-chief, Chang's counsel indicated that Chang intended to testify "[o]nly for the purpose of" the motion to suppress. The court responded, "This is going to get a little confusing since we're doing the motion combined with the trial. ... [T]he problem is [that] if he's going to testify it's also ... part of the trial as well." The court explained that "whatever [Chang] gets up on the stand to [say], I'm going to actually have to decide on it for the trial. ... [T]he court's going to listen to all of that and use all of that in determining for the trial his guilt or innocence." The court stated that it wanted to respect Chang's right not to testify, but it ruled that "if he testifie[d] for purposes of the motion," he would be "kind of stuck at that point" because they were "consolidating the motion and the trial" and the court could not "unhear what [it] heard."
After a recess, the court reconvened and stated, "So just so that we're clear, if [Chang] wants to testify for the motion to suppress, he has that right, okay, but I'd have to like bifurcate, instead of consolidating it still, it has to be separate, okay." The court added that "any testimony that [Chang] made for purposes of the motion ... the court [would] then decide ... whether or not ... what he testified to earlier in the *128 motion would be consolidated or not or if he wanted to add to it or things like that." The court then spoke to Chang and the following interaction occurred:
THE COURT: So, Mr. Chang, like I said, I know it was a little confusing, and I might have been confusing to you, so I want to make sure that it's absolutely clear to you. Although we agreed to consolidate everything and have the motion and the trial together, you have a right to testify at the motion as well as a right to testify at trial. Okay.
THE DEFENDANT: Okay.
THE COURT: That whole right to remain silent, that goes for the trial portion of it. I don't necessarily have to do that portion of it for the--for the motion, okay. But if you wanted to testify for the motion, it's your right. We can figure out how to work the logistics of it in our own way. And if you testify at the motion, it doesn't necessarily mean that what you testify in the motion I'm automatically going to use for the trial.
THE DEFENDANT: Okay.
THE COURT: If you didn't want to, you know, whatever you said in the motion, if you didn't want it for the trial, I would just have to take it out of my mind and put it on the side. Okay?
THE DEFENDANT: Okay.
Chang decided not to testify.
The court then considered the parties' arguments on Chang's motion to suppress. The court granted the motion to suppress with regard to Chang's oral statements to the arresting officer and denied the motion as to the officer's observations of Chang's physical actions during the field sobriety test. Chang then rested without presenting any evidence, and the court found Chang guilty of the charge.
II. STANDARD OF REVIEW
Interpretation of rules promulgated by this court "involves principles of statutory construction" and therefore "is a question of law reviewable de novo." State v. Bohannon, 102 Hawai'i 228, 240, 74 P.3d 980, 992 (2003). Similarly, "[w]e interpret statutes de novo." State v. Brantley, 99 Hawai'i 463, 464, 56 P.3d 1252, 1253 (2002) (citing State v. Cornelio, 84 Hawai'i 476, 483, 935 P.2d 1021, 1028 (1997) ).
III. DISCUSSION
The district court in this case consolidated a hearing on Chang's motion to suppress with his trial, deciding both matters in the same proceeding. We first consider whether this practice comports with the Hawai'i Revised Statutes and the rules of penal procedure promulgated by this court before turning to the administrative implications of combining a hearing on a suppression motion with the ultimate determination of the case.[3]
A. HRPP Rule 12(e) and the Hawai'i Revised Statutes Do Not Permit Consolidation of a Motion to Suppress Hearing with a Trial
1. Consolidation Violates the Plain Text and Purpose of HRPP Rule 12(e)
Rule 12 of the HRPP dictates when pretrial motions must be filed in criminal cases and, significantly, when trial courts must rule on these motions. Relevant to this case, HRPP Rule 12(e) provides that "[a] motion made before trial shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue or until after verdict; provided that a motion to suppress made before trial shall be determined before trial."[4] We interpret *129 statutes "foremost in light of the plain meaning accorded their operative terms." Kinkaid v. Bd. of Review of City and Cty. of Honolulu, 106 Hawai'i 318, 323, 104 P.3d 905, 910 (2004). And "[a]bsent an absurd or unjust result ... this court is bound to give effect to the plain meaning of unambiguous statutory language." State v. Mainaaupo, 117 Hawai'i 235, 247, 178 P.3d 1, 13 (2008) (quoting Thompson v. Kyo-Ya Co., 112 Hawai'i 472, 475, 146 P.3d 1049, 1052 (2006) ). The plain text of this rule is clear: trial courts must rule on a motion to suppress before trial. It is self-evident that, if a motion to suppress is consolidated with a trial, the court cannot rule on such a motion "before trial."
Additionally, as we stated in Association of Condominium Homeowners of Tropics at Waikele v. Sakuma, it is a fundamental tenet of statutory interpretation that "[c]ourts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." 131 Hawai'i 254, 256, 318 P.3d 94, 96 (2013) (quoting
Keliipuleole v. Wilson, 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997) ). This principle of construction applies equally to rules of procedure. Indeed, Sakuma itself applied this canon to the interpretation of Rule 4 of the Hawai'i Rules of Appellate Procedure. Id. at 255-56, 318 P.3d at 95-96.
Consolidating a suppression hearing with a trial ignores the text of HRPP Rule 12(e) by rendering "superfluous, void, or insignificant" the mandate that "a motion to suppress made before trial shall be determined before trial." An alternative "construction can be legitimately found which will give force to and preserve all words of the [rule]." Id. at 256, 318 P.3d at 96. Namely, a court can simply not allow consolidation of a suppression hearing and trial. Thus, the plain reading of the text of HRPP Rule 12(e) provides that a motion to suppress made before trial must be heard and determined before the commencement of trial.
Further, when interpreting rules and statutes, we cannot ignore the drafters intent; "we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." United Pub. Workers, AFMSCME, Local 464, AFL-CIO v. Hanneman, 106 Hawaii 359, 363, 105 P.3d 236, 240 (2005) (quoting Guth v. Freeland, 96 Hawai'i 147, 149-50, 28 P.3d 982, 984-85 (2001) ). The 1975 commentary to the HRPP makes clear that HRPP Rule 12(e) 's mandate that courts decide suppression motions before trial has a specific purpose in the course of criminal proceedings: to preserve the State's right to appeal if the court grants the defendant's suppression motion. The commentary provides the following explanation of HRPP Rule 12 :
Section (e) provides that the court shall rule on a pretrial motion before trial unless the court orders that it be decided upon at the trial of the general issue or until after verdict. It is the same as Proposed Federal Rule 12(e), but with the additional proviso that pretrial motions to suppress must be decided before trial in order to give the prosecution an opportunity to appeal an adverse ruling prior to trial.
Comm. For Penal Rules Revision of the Judicial Council of Haw., Proposed Hawai'i Rules of Penal Procedure at 80 (June 1975) (emphasis added). Thus, HRPP Rule 12(e), which has remained unchanged since its adoption, requires that pretrial motions to suppress must be decided before trial "in order to give the prosecution an opportunity to appeal an adverse ruling prior to trial." Id.
This protection is necessary because, in a criminal case, the State can "only appeal in those limited instances established by HRS § 641-13." State v. Oshiro, 69 Haw. 438, 441, 746 P.2d 568, 570 (1987) ; accord State v. Fukusaku, 85 Hawai'i 462, 490, 946 P.2d 32, 60 (1997) ("The right of appeal in a criminal case is purely statutory and exists only when *130 given by some constitutional or statutory provision. ... The Prosecution's right of appeal in criminal cases is limited to those instances set forth in HRS § 641-13 [.]" (quoting State v. Wells, 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995) (internal quotation marks omitted)).
One of the "limited instances" in which the State may appeal is, "in all criminal matters, ... [f]rom a pretrial order granting a motion for the suppression of evidence, including a confession or admission, ... in which case the appellate court shall give priority to the appeal and the order shall be stayed pending the outcome of the appeal." HRS § 641-13(7) (2016) (emphasis added). This provision plays a crucial role in preserving the State's right to appeal the suppression of evidence in a criminal trial because, under the Hawai'i Constitution, defendants in criminal cases may not be "subject [to] the same offense" by being "twice put in jeopardy."[5] Haw. Const. art. I, § 10. The federal constitution also provides this protection.[6] See U.S. Const. amend. V.
Without the interlocutory right to appeal provided to the State by HRS § 641-13(7), the State would be required to proceed to trial without the evidence suppressed by an adverse pretrial ruling. And, if the defendant was acquitted or found guilty of a lesser charge without the suppressed evidence, the State would be precluded from challenging the suppression ruling and retrying the defendant by the double jeopardy clause. State v. Kalaola, 124 Hawai'i 43, 52, 237 P.3d 1109, 1118 (2010) ("[D]ouble jeopardy presents an absolute bar to retrial where, inter alia, the defendant 'has been acquitted[.']" (quoting State v. Feliciano, 62 Haw. 637, 644, 618 P.2d 306, 311 (1980) )).
In enacting the language of HRS § 641-13(7),[7] the House of Representatives explained the following:
The purpose of this bill is to amend H.R.S. Section 641-12 to enlarge the right of the State to appeal in criminal proceedings, particularly with respect to pre-trial orders.
The Hawaii law of search and seizure and of confessions is uncertain and lacks uniformity of construction by the trial courts. The issue of admissibility of such evidence is of vital significance to prosecution, defense, and the fair administration of justice. Your Committee concurs with the intent of this bill that a pre-trial order granting a motion for the suppression of evidence should be subject to a conclusive appellate ruling.
Your Committee amended such provision to provide in that case the Supreme Court shall give priority to such an appeal and the order shall be stayed pending the outcome of the appeal....
H. Stand Comm. Rep. No. 515-72, in 1972 House Journal, at 876 (emphases added); see also State v. Naititi, 104 Hawai'i 224, 235, 87 P.3d 893, 904 (2004) (holding that "the intent of" HRS § 641-13(7) is "to facilitate the administration of justice in criminal cases by allowing the prosecution to obtain a conclusive ruling on" suppression issues through a direct appeal). Consistent with this purpose, *131 HRPP Rule 12(e) may not be interpreted to infringe upon the State's right to appeal a trial court's pretrial order granting a defendant's motion to suppress.
That the statute only allows appeals from a suppression motion granted before trial was addressed by this court in State v. Wells, 78 Hawai'i 373, 894 P.2d 70 (1995). In Wells, after the trial began, the trial court dismissed four counts of a twenty-nine-count indictment for the State's failure to include essential elements in these charged offenses. Id. at 375-76, 894 P.2d at 72-73. One of the issues on appeal was whether subsections (1) and (2) of HRS § 641-13 (Supp. 1992), which respectively authorized the State to appeal from the dismissal of "any indictment or complaint or any count thereof" and the dismissal of "the entire case where the defendant has not been put in jeopardy," were mutually exclusive; that is, whether "subsection (1) applie[d] only to pretrial orders and subsection (2) applie[d] only to after-commencement-of-trial orders." Id. at 376-78, 894 P.2d at 73-75 (emphases omitted).
The Wells court concluded that subsection (1) was "not necessarily limited to pretrial situations" because "if the legislature intended such a result, it could have made this clear in the language of the statute." Id. at 378-79, 894 P.2d at 75-76. In support of its reasoning, the court cited to subsection (7) of HRS § 641-13 and emphasized that the language "pretrial order" in this subsection is an example of a situation where the legislature expressly provided for an appeal of an order made before trial. Id. Thus, Wells squarely indicates that the language "pretrial order" in HRS § 641-13(7) means orders issued before trial.
This construction of the statute is further supported by the practical implications of the State's appeal of an order suppressing evidence. Under HRS § 641-13(7), if the State appeals the order suppressing evidence, "the order shall be stayed pending the outcome of the appeal." If the trial court were to rule on the motion during trial, then the State would likely lose its statutory right to an automatic stay. As a practical matter, a court would be unable to grant a stay during a jury trial, and it is highly questionable whether it could do so during a bench trial as the court would have to suspend the trial indefinitely in the middle of the presentation of evidence.
In other jurisdictions with rules of criminal procedure similar to Hawai'i, courts require motions to suppress to be determined before trial. In State v. Litten, for instance, the defendant filed two motions to suppress evidence "[o]ver a month prior to trial," and the trial court "filed an entry stating that the motions to suppress would be heard during trial." 884 N.E.2d 654, 658 (Ohio Ct. App. 2008). The trial court denied both motions "[a]t the conclusion of the presentation of evidence" and convicted the defendant. Id. at 655, 658. On appeal, the Litten court explained that Rule 12(C)(3) of the Ohio Rules of Criminal Procedure (Crim.R.) "provides that a motion to suppress evidence must be filed prior to trial" and under Crim.R. 12(F) "such [ ] motion[s] 'shall be determined before trial.' " Id. at 658. The court explained that "the plain language of Crim.R. 12[F] does not vest the trial court with any discretion as to when such motions are to be determined." Id. (quoting State v. Weirich, No. WMS-84-8, 1984 WL 14382, at *1 (Ohio Ct. App. Oct. 5, 1984) ). Therefore, the Litten court concluded that "[t]he method employed by the trial court" constituted error, and it accordingly reversed the trial court. Id. at 659 ; see also State v. Tolbert, 591 N.E.2d 325, 336 (Ohio Ct. App. 1990) ("The failure to rule upon a pretrial motion prior to trial constitutes error.").
Other jurisdictions have also recognized the practical issue of the State losing its right to appeal. Tennessee, for example, has interpreted its equivalent rule so that "motions to suppress evidence must be ... determined before trial" because "when jeopardy has attached, ... the [S]tate has no means to appeal an adverse ruling." State v. Bruins, 1987 WL 7315, at *1 (Tenn. Crim. App. Mar. 4, 1987). Courts in Pennsylvania[8] *132 have also interpreted their criminal procedure rules as requiring a trial court to rule on motions to suppress before trial even though its counterpart rule is less explicit than our own regarding the required timing of the court's ruling. See In re L.J., 79 A.3d 1073, 1084 (Pa. 2013) ("[T]he suppression court's decision is 'final, conclusive, and binding at trial[.]' ... This language strongly suggests that the record of the suppression hearing is intended to be the complete record for suppression issues, and those issues are to be finally determined before trial, not during trial or after trial."). And California too has interpreted its equivalent rule strictly. See Moreno v. Superior Court, 146 Cal.Rptr. 35, 36 (App. 1978) ("The statute makes it clear that a criminal defendant has a right to a hearing before trial to determine the validity of a search and seizure; it is not a matter of judicial discretion.").[9]
Similar to Ohio's rule, HRPP Rule 12(e) "does not vest the trial court with any discretion as to when [motions to suppress] are to be determined." Litten, 884 N.E.2d at 658. There are no exceptions in the HRPP Rule 12(e) 's mandate regarding motions to suppress as there are for other "motion[s] made before trial." See HRPP Rule 12(e) ("A motion made before trial shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue or until after verdict; provided that a motion to suppress made before trial shall be determined before trial." (emphasis added)) Rather, HRPP Rule 12(e) commands trial courts to determine motions to suppress before trial.[10]
2. Our Precedents Regarding Consolidation Have Been Wrongly Decided
Notwithstanding the clear language of HRPP Rule 12(e) and HRS § 641-13(7), our existing precedent indicates that it is permissible to consolidate a suppression motion hearing with a trial. In State v. Texeira, the trial court consolidated the defendants' motion to suppress with the trial pursuant to the parties' stipulation to such a procedure. 62 Haw. 44, 45, 609 P.2d 131, 133 (1980). At the conclusion of the consolidated hearing and trial, the trial court granted the defendant's motion to suppress and the defendant's motion for judgment of acquittal. Id. at 45-46, 609 P.2d at 133. Before this court, the defendants argued that the State could not appeal because of the acquittal, but this argument was rejected. Id. at 46, 609 P.2d at 133.
In a per curiam opinion, the Texeira court determined that "[t]he stipulation for the joint hearing on the motion to suppress and the trial on the merits did not constitute a waiver by the State of its statutory right to appeal from the adverse ruling of the trial court on the motion to suppress." Id. The court held that "[t]he trial court may not in this manner deprive the State of its statutory right, under HRS § 641-13(7), to appeal from the order of suppression." Id. Therefore, the State was allowed to appeal the order granting the motion to suppress. Id.
The Texeira court did not reference HRPP Rule 12(e). Nor did it analyze the text of HRS § 641-13(7). Rather, the court merely *133 stated that the State could not be deprived of its right to appeal by granting a motion to suppress and then acquitting the defendant. Id. To preserve the State's right to appeal, the Texeira court disregarded the effect of the trial court's acquittal of the defendants and that section 641-13(7) limits the State's appeal to a "pretrial order."[11] Accordingly, Texeira rests on an incomplete analysis and directly contradicts the plain language of HRS § 641-13(7).
In State v. Doyle, also a per curiam opinion, the defendant was convicted at a bench trial of promoting a detrimental drug in the third degree, and the defendant appealed, arguing that "the trial court erred in directing that the defendant's motion to suppress and the trial on the merits be heard contemporaneously." 64 Haw. 229, 230, 638 P.2d 332, 333-34 (1981). The court in Doyle noted that "federal courts have taken the position that pursuant to Rule 12(e) of the Federal Rules of Criminal Procedure, ... the trial court has the discretionary authority to defer hearing and determination of a motion to suppress made before trial until the trial itself." Id. at 230-31, 638 P.2d at 334 (citing United States v. Thompson, 558 F.2d 522 (9th Cir. 1977) ).
The Doyle court acknowledged that HRPP Rule 12(e) contains a clause that is not in the federal rule that provides that "a motion to suppress made before trial shall be determined before trial."[12] Id. The court also recognized that this clause was included in HRPP Rule 12(e) "to provide the prosecution with the opportunity, prior to trial (and pursuant to HRS § 641-13(7) ), to appeal a ruling on the defendant's motion to suppress which is adverse to the State."[13] Id. But despite these textual differences between the Hawai'i and federal rule, Doyle relied on the Ninth Circuit's interpretation of the federal rule in United States v. Thompson to uphold the procedure. 64 Haw. at 230-31, 638 P.2d at 334 (citing 558 F.2d 522 ).
In Thompson, the defendants contended on appeal that "postponing the hearing on their motions to suppress until after the jury had begun deliberations" was error. 558 F.2d at 523-24. Based on Federal Rule of Criminal Procedure (Fed. R. Crim. P.) 12(e),[14] the Thompson court stated that "while it is preferable that [suppression] motions be decided before trial ... that procedure is not mandatory." Id. at 525 (citing Fed. R. Crim. P. 12(e) (providing that a court could defer a hearing on a motion to suppress made before trial as long as no "party's right to appeal is adversely affected")). The discretionary language included in the federal rule is, however, precisely the opposite of the plain text of Hawai'i's rule, which requires that "a motion to suppress made before trial [ ] be determined before trial."[15] HRPP Rule 12(e). Because *134 the federal rule analyzed in Thompson is contrary to the text of HRPP Rule 12(e), it did not provide a sound foundation for the court's ruling in Doyle.[16]
Like Texeira, Doyle did not analyze the text or purpose of HRPP Rule 12(e) or HRS § 641-13(7). Rather, the court simply cited to the holding in Texeira without addressing how the consolidated procedure was consistent with the penal rule. 64 Haw. at 230-31, 638 P.2d at 333-34. Thus, both decisions summarily concluded that trial courts could hear a motion to suppress contemporaneously with a trial if both the State and the defendant agree to the procedure--a position contrary to the plain text and purpose of HRPP Rule 12(e).
"[A] court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." Dairy Rd. Partners v. Island Ins. Co., 92 Hawai'i 398, 421, 992 P.2d 93, 116 (2000) (quoting State v. Stocker, 90 Hawai'i 85, 95, 976 P.2d 399, 409 (1999) ). Nevertheless, "there is no necessity or sound legal reason to perpetuate an error under the doctrine of stare decisis." State v. Garcia, 96 Hawai'i 200, 206, 29 P.3d 919, 925 (2001) (quoting Robinson v. Ariyoshi, 65 Haw. 641, 653 n.10, 658 P.2d 287, 297 n.10 (1982) ). The doctrine is "subordinate to legal reasons and justice and we should not be unduly hesitant to overrule a former decision when to do so would bring about what is considered manifest justice." Ariyoshi, 65 Haw. at 653 n.10, 658 P.2d at 297 n. 10 (quoting McBryde Sugar Co. v. Robinson, 54 Haw. 174, 180, 504 P.2d 1330, 1335 (1973) ).
It is clear that Texeira disregarded HRPP Rule 12(e) in reaching a conclusion that is fundamentally inconsistent with the rule's language and intent, and that Doyle and its progeny have served to perpetuate this error.[17] Further, many new developments in procedural justice have been introduced since Doyle was decided, and they have collectively made consolidation extremely problematic in terms of trial management.
B. Consolidation Results in Substantial Procedural Complications
Even if the consolidation of a suppression hearing with a trial was not contrary to the text and purpose of our HRPP Rule 12(e) and HRS § 641-13(7), the procedure would result in significant administrative complications. In keeping with a host of post-Doyle precedents setting forth the circumstances in which a court must advise a defendant of fundamental rights, the court would need to inform the defendant in any consolidated proceeding of the separate right to testify at the suppression hearing and the right to testify at trial, and that the suppression hearing testimony may not be used to prove the defendant's guilt. See, e.g., Tachibana v. State, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995) (requiring the court to engage a defendant in a colloquy regarding the right to testify); State v. Lewis, 94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000) (requiring a *135 pretrial advisement regarding the right to testify and the right not to testify); State v. Monteil, 134 Hawai'i 361, 373, 341 P.3d 567, 579 (2014) (requiring that the Lewis advisement include that the decision not to testify cannot be used against the defendant); State v. Torres, 144 Hawai'i 282, 294, 439 P.3d 234, 246 (2019) (extending Tachibana to also encompass the right not to testify).
As the facts of this case demonstrate, this presents a plethora of difficulties related to explaining these rights to the defendant and ensuring that they are honored, as a court would have to apply the defendant's testimony for one purpose and disregard it for another--all within the same proceeding. Here, the consolidation procedure led to the district court's failure to properly inform Chang of his separate and distinct rights to testify, rendering Chang's subsequent waiver of these rights invalid. Similar problems would likely arise in future cases if courts continued to consolidate trials and suppression hearings.
The procedure of consolidation negatively impacts the rights of defendants in other ways as well. For example, the defendant's right to have a suppression motion heard and decided before trial enables that defendant to better calculate whether it is in the defendant's best interest to proceed to trial or to plead guilty or no contest, with or without a plea agreement. That is, consolidation disadvantages defendants by limiting their knowledge of the evidence against them before the start of trial. If a suppression hearing is held before trial, a defendant is able to generally assess portions of the State's case through the testimony of its witnesses and other evidence adduced, as well as by knowing the admissibility of the evidence that the defendant seeks to suppress. This may be a substantial factor in the defendant's pleading decision. But a defendant loses this opportunity if the court consolidates a suppression hearing with a trial. If a court does not rule on a suppression motion prior to trial, the defendant is forced to decide whether to plead guilty or no contest on the basis of incomplete information.
The consolidated proceeding also forecloses the defendant's ability to obtain deferred acceptance of a guilty or no contest plea. When entering a deferred plea, a defendant "voluntarily pleads guilty or nolo contender, prior to the commencement of trial." HRS § 853-1(a)(1). The trial court may then "defer further proceedings" without "entering a judgment of guilt" and impose certain "conditions" that the defendant must follow. HRS § 853-1(a), (b). Upon the defendant complying with the "conditions," "the court shall discharge the defendant and dismiss the charge." HRS § 853-1(c). This dismissal is "without adjudication of guilt, [it] eliminate[s] any civil admission of guilt, and [it] is not a conviction." HRS § 853-1(d). However, because the guilty or no contest plea must be entered "prior to commencement of trial," a consolidated proceeding prevents the defendant from knowing the disposition of the suppression motion when a decision regarding whether to pursue a deferred plea must be made. Thus, the trial court would need to inform the defendant that the right to seek a deferred plea would be lost if a consolidated trial and suppression hearing commences.
Additionally, consolidation effectively eliminates a defendant's ability to enter a conditional plea under HRPP Rule 11(a)(2). Under HRPP Rule 11(a)(2), with the approval of the court and the consent of the State, "a defendant may enter a conditional plea of guilty or no contest, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specific pretrial motion. If the defendant "prevails on appeal," the defendant is "allowed to withdraw the plea," and the case is resumed in conformance with the appellate ruling. Id. Thus, a conditional plea provides the defendant the ability to plead guilty or no contest, take advantage of any plea agreement or other inducement that pleading offers, and then challenge a pretrial motion on appeal. See HRPP Rule 11(a)(2). If consolidation occurs, however, a defendant essentially forfeits the opportunity to enter a conditional plea as the resolution of the motion would occur within the trial proceeding.[18] Accordingly, *136 a defendant would also need to be informed that commencing the trial prior to resolution of the suppression motion would result in the defendant relinquishing the right to potentially enter a conditional guilty or no contest plea that would preserve the defendant's ability to appeal the court's eventual ruling on the suppression motion.
It is also noted that under our current precedent, the State can, apparently, appeal an order granting a "pretrial" motion after a trial begins. Texeira, 62 Haw. at 46, 609 P.2d at 133. To comply with the prohibition against double jeopardy, the State would need to obtain a stay prior to the court reaching a verdict, requiring a trial court to stop proceedings in the middle of trial pending the resolution of the appeal. See United States v. Martin Linen Supply Co., 430 U.S. 564, 575 (1977). Prior to obtaining a defendant's consent to consolidation, a court would need to inform the defendant that the trial could be stayed midtrial and that the trial would not resume until the appeal was resolved, which would likely entail a delay of a year or longer.[19]
The facts of this case also demonstrate the complications of consolidation for the State and the threat of the elimination of its right to appeal when a suppression motion is not decided before trial. Here, the district court granted Chang's motion to suppress statements after the presentation of the State's evidence. Under the plain language of HRS § 641-13(7), the State lost its right to appeal when it agreed to consolidation because the suppression of evidence (1) was merely an oral ruling and not an appealable "order" and (2) was not a "pretrial order." As explained, Texeira suggests that the State can appeal regardless of the timing of the order notwithstanding the plain text of the statute. But the State's ability to obtain a stay to appeal the ruling is unclear because HRS § 641-13(7) grants an automatic stay only for the appeal of "a pretrial order granting a motion for the suppression of evidence." (Emphasis added.) Thus, the State's right to appeal an adverse suppression ruling that is rendered during a consolidation procedure is at best questionable.[20]
As these examples demonstrate, even if the consolidation procedure were not contrary to the language and purpose of HRPP Rule 12(e) and HRS § 641-13(7), numerous protections would need to be implemented to protect the rights of defendants and the State. These added procedural measures would make the criminal process less efficient and may be insufficient to correct the negative impact of the consolidation process *137 on the fair administration of justice.[21] Indeed, the case before us indicates, at minimum, the likelihood of appeals challenging a court's advisements regarding the effects of the consolidation procedure on fundamental rights of the defendant. Thus, the efficiency of the criminal process and protection of the parties' rights also supports our conclusion that a trial court must rule on motions to suppress prior to the start of trial.
IV. CONCLUSION
The Florida Supreme Court has succinctly summarized the significant benefits of holding a suppression hearing before the start of trial:
If the motion is heard some time prior to trial and ruled upon, the State and defense have more time to decide upon their tactics, such as a decision by the defense as to whether to plead guilty, waive jury, or go to jury trial, and a decision by the State, if the ruling on the motion is adverse to the State, whether to appeal the ruling of the court.
Bailey v. State, 319 So.2d 22, 29 (Fla. 1975). To avoid the procedural complications caused by consolidation and to honor the plain language and purpose of HRPP Rule 12(e) and HRS § 641-13(7), we now hold that trial courts may not consolidate a motion to suppress hearing with a trial. We further conclude that our prior precedents that held to the contrary were incorrectly decided, and they are therefore overruled.[22] In sum, if a defendant in a criminal case files a motion to suppress before trial, the trial court must hold a hearing and rule on the motion before the commencement of trial. This requirement will be effective in trials beginning after the filing date of this opinion.
Sabrina S. McKenna
Richard W. Pollack
Michael D. Wilson
DISSENTING OPINION BY RECKTENWALD, C.J., IN WHICH NAKAYAMA, J., JOINS
I respectfully dissent from the Majority's opinion, which will prohibit the consolidation of hearings on motions to suppress with trials when both parties consent on the record.
This court first determined in State v. Doyle, 64 Haw. 229, 638 P.2d 332 (1981), and later recognized in State v. Thomas, 72 Haw. 48, 805 P.2d 1212 (1991), that consolidation of a hearing on a motion to suppress with a trial was permissible when both parties agreed on the record to such a consolidation.[1] Doyle was decided in 1981. Thus, such consolidations have been authorized in Hawai'i courts for nearly forty years.
The Majority overrules this court's precedent in Doyle and Thomas sua sponte. Neither party in this case at any time suggested that the trial court's consolidation of the suppression hearing and trial was improper or contrary to Hawai'i Rules of Penal Procedure (HRPP) Rule 12(e). Rather, both parties expressly agreed to consolidate Chang's hearing on his motion to suppress with his bench trial. As Chang's attorney explained, the parties were "consolidating everything so [that they wouldn't] have to have multiple hearings [on] multiple dates."
As the Majority acknowledges, the commentary to HRPP Rule 12(e) indicates that the provision's intent is to protect the State's statutory right, prior to trial, to appeal an adverse ruling on a suppression motion.[2] See *138 Majority at 144 Hawai'i at 539, 445 P.3d at 920; Comm. For Penal Rules Revision of the Judicial Council of Haw., Proposed Hawai'i Rules of Penal Procedure at 80 (June 1975); Doyle, 64 Haw. at 231 n.2, 638 P.2d at 334 n.2. Given this purpose, it would appear that the State should have the ability to waive that protection if it chooses to do so, as long as it is willing to accept the possibility that its appeal rights could be lost if the defendant is ultimately acquitted. Parties often must make strategic decisions about whether and when to file appeals and I respectfully disagree with the Majority's suggestion that allowing the prosecution to do so in this context would denigrate the judicial process or improperly delegate the court's authority. See Majority at 144 Hawai'i at 555 n.20, 445 P.3d at 136 n.20.
The Majority also identifies a number of potential consequences for a defendant who agrees to consolidate, including the defendant's hampered ability to obtain a deferred acceptance of a guilty or no contest plea, enter a conditional plea, or know the evidence against him or her prior to trial. See Majority at 144 Hawai'i at 554-55, 445 P.3d at 135-36 . Again, I fail to see why defendants should not be able to choose to forgo those possible benefits, and to instead have the case resolved at one time, rather than in multiple proceedings.
To be sure, defendants should be advised of their rights with respect to a consolidated hearing and trial. Thus, I would hold that where the consolidation of a pre-trial suppression hearing and trial is proposed, the trial court should give a modified Lewis advisement prior to seeking confirmation that the defendant consents to consolidation.[3] Providing the advisement at that time would ensure that the defendant understood the ramifications of providing such consent.
Specifically, the advisement would need to make clear that: (1) the defendant has the right to testify and the right not to testify pertaining to the suppression hearing, as well as to trial; (2) the defendant's decision to testify or to remain silent with regard to the motion is independent of the defendant's decision to testify or to remain silent at trial; and (3) the defendant's suppression hearing testimony may not be used as evidence at trial without the defendant's consent.
I emphasize, again, that the ability of the district court to consolidate the proceedings was not raised, briefed, or argued by the parties before this court. This court should not change such a well-settled procedure on our accord without being fully informed by those who will be directly affected by that change. Rather than acting sua sponte, I believe a better approach would be to present the issue to the penal rules committee, for consideration of possible amendments to HRPP Rule 12. Under that approach, all interested parties, including the bar and public, could provide their input.

Chief Justice Recktenwald writes for the court, except with respect to whether, prospectively, trial courts may consolidate hearings on motions to suppress evidence with trials. With respect to that issue, Justice Pollack writes for the majority of the court, and Chief Justice Recktenwald respectfully dissents.

Hawai'i Revised Statutes (HRS) § 291E-6 1(a)(1) (2007) provides: "A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle[ w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]"

The Honorable Trish K. Morikawa presided.

This pre-trial advisement is required by State v. Monteil, 134 Hawai'i 361, 371, 341 P.3d 567, 577 (2014), and State v. Lewis, 94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000). "[P]rior to the start of trial, the court shall [ ] inform the defendant of [the] personal right to testify or not to testify and [ ] alert the defendant that, if [the defendant] has not testified by the end of the trial, the court will briefly question [the defendant] to ensure that the decision not to testify is the defendant's own decision." State v. Han, 130 Hawai'i 83, 89, 306 P.3d 128, 134 (2013) (citing Lewis, 94 Hawai'i at 297, 12 P.3d at 1238 ). The court must also advise the defendant at this time that the defendant's exercise of the right not to testify may not be used by the fact finder when determining the defendant's innocence or guilt. Monteil, 134 Hawai'i at 373, 341 P.3d at 579.

On cross-examination, Officer Spiker explained that although he told Chang that participation in the SFST was "voluntary," he did not specifically tell Chang that he had "the right to refuse" the test. Officer Spiker explained, "I didn't, like, demand he get out [of the vehicle] but I just kind of said, ... [I'm] going to offer you [an SFST] ... based on your traffic violations and indicia of alcohol, and if you'd like to participate, and then he said yeah, he would."

In Tachibana v. State, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995), we held that trial courts must advise criminal defendants of the right to testify and, where a defendant chooses not to testify, the trial court must obtain an on-the-record waiver of that right. This on-the-record waiver serves as an assurance that the defendant was aware of the right to testify and that the defendant's waiver of that right was knowing, voluntary, and intelligent. Id. at 234-37, 900 P.2d at 1301-04. Further, in State v. Torres, 144 Hawai'i 282, 285, 439 P.3d 234, 237 (2019), we made clear that "trial courts must engage the defendant in an on-the-record colloquy regarding the right to testify and to not testify when either right is waived, effectively making such a colloquy necessary in every [criminal] trial."

We do not address Chang's other arguments, except to find that sufficient evidence supported Chang's conviction.

However, the majority opinion by Justice Pollack prospectively overrules Doyle and Thomas.

HRS § 291E-61(a)(1) (2007) provides the following:
(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

Although Chang's motion was entitled "Defendant's Motion to Suppress for Violating Article I, Section 7 and 10 of the Hawaii Constitution," the body of the motion made arguments only with respect to article I, section 7, which protects "[t]he right of the people to be secure ... against unreasonable searches, seizures, and invasions of privacy."

Although Chang has not challenged the consolidation of the hearing on his suppression motion with his trial, we have held that "where this court resolves a properly preserved issue by answering a threshold or dispositive question of law, even though the argument is not advanced by the parties, the plain error doctrine simply has no application." Cox v. Cox, 138 Hawai'i 476, 488, 382 P.3d 288, 300 (2016) (citing Waldecker v. O'Scanlon, 137 Hawai'i 460, 375 P.3d 239, 245-46 (2016), and Akamine & Sons, Ltd. v. Hawaii National Bank, 54 Haw. 107, 114-15, 503 P.2d 424, 429 (1972) ). To determine whether the district court's advisements to Chang about the mechanics and implications of consolidation were proper, we must necessarily consider whether the consolidation was itself proper, and the issue is thus squarely before this court.

HRPP Rule 12(e) provides, in full, the following:
A motion made before trial shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue or until after verdict; provided that a motion to suppress made before trial shall be determined before trial. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.

The double jeopardy clause "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." State v. Quitog, 85 Hawai'i 128, 140, 938 P.2d 559, 571 (1997) (quoting Burks v. United States, 437 U.S. 1, 11 (1978) ). Accordingly, "the Double Jeopardy Clause bars appeal[s] from an acquittal." United States v. Martin Linen Supply Co., 430 U.S. 564, 575 (1977) ; accord Smith v. Massachusetts, 543 U.S. 462, 467 (2005) ("[W]e have long held that the Double Jeopardy Clause of the Fifth Amendment prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict."); see also HRS § 701-110(1) ("When a prosecution is for an offense under the same statutory provision and is based on the same facts as a former prosecution, it is barred by the former prosecution [when] ... [t]he former prosecution resulted in an acquittal which has not subsequently been set aside.").

The United States Supreme Court has recognized one exception to the federal double jeopardy rule: "When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty." Smith, 543 U.S. at 467 ; see also HRS § 641-13(9).

The current language of section 641-13(7) was adopted in 1972. See Haw. Sess. Laws Act 148, § 1 at 497.

Rule 581(J) of the Pennsylvania Rules of Criminal Procedure provides that "If the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive, and binding at trial, except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its suppressibility." (Emphasis added.)

At the time Moreno was decided, California Penal Code § 1538.5(i) provided the following in relevant part:
If the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing, or if the property or evidence relates to a felony offense initiated by indictment, the defendant shall have the right to renew or make the motion in the superior court at a special hearing relating to the validity of the search or seizure which shall be heard prior to trial and at least 10 days after notice to the people unless the people are willing to waive a portion of this time. The defendant shall have the right to litigate the validity of a search or seizure de novo on the basis of the evidence presented at a special hearing.
(Emphasis added.)

The dissent contends that the State and defendant should be permitted to waive the requirement of HRPP Rule 12(e) by stipulation. Dissent at 3. But we have long held "that the parties' stipulation as to a question of law is not binding on the court." Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawai'i 36, 46, 305 P.3d 452, 462 (2013). The parties are not permitted to stipulate to a procedure that is fundamentally incompatible with the text and purpose of our court rules governing the subject.

This result is contrary to United States Supreme Court precedent holding that "the Double Jeopardy Clause bars appeal[s] from an acquittal." United States v. Martin Linen Supply Co., 430 U.S. 564, 575 (1977).

At the time, Federal Rules of Criminal Procedure 12(e) provided, "A motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected." Doyle, 64 Haw. at 231, 638 P.2d at 334.

This court subsequently stated that absent stipulation by the parties to consolidate the suppression hearing and the trial, "[i]t is obvious" that "lump[ing] together the hearing on the motion to suppress and the trial" violates HRPP Rule 12(e). State v. Rodgers, 70 Haw. 156, 157, 766 P.3d 675, 675 (1988). In State v. Thomas, the holding in Doyle was reaffirmed, and the court stated that "[t]he only occasion where a court need not decide a motion to suppress prior to trial is where the parties agree to consolidate the hearing on the motion with trial pursuant to our holding in State v. Doyle." 72 Haw. 48, 53, 805 P.2d 1212, 1214 (1991). Thomas, like Doyle, did not explain why a court could violate the plain text of HRPP Rule 12(e) by agreement of the parties.

The rule at issue was contained in Fed. R. Crim. P. 12(e) at the time that Thompson was decided, but the provision is now codified as Fed. R. Crim. P. 12(d). See Fed. R. Crim. P. 12(d).

Additionally, the Ninth Circuit noted that under Fed. R. Crim. P. 12(e) a trial court may not defer a suppression hearing if a "party's right to appeal is adversely affected." Thompson, 558 F.2d at 525. But the court found that this provision did not apply because "[o]bviously, [the defendants'] rights to appeal were not 'adversely affected' by the trial court's decision to postpone the hearing." Id. This reasoning is plainly shortsighted, however, because while it is true a defendant's right to appeal an adverse suppression rule is not affected by a stipulated proceeding, it may affect the State's appellate right. And determining whether a party's right to appeal has been affected by a suppression ruling is necessarily an ex post evaluation. While appellate courts have the benefit of hindsight, trial courts do not. Thus, when a trial court consolidates a motion to suppress with a trial, it does not know whether its pending ruling will affect a party's right to appeal. The only way to ensure that no party's right to appeal is affected is to preclude consolidation of a motion to suppress hearing with a trial.

We note that neither Thompson's reasoning nor its conclusion has been ubiquitously adopted by federal courts. The First Circuit, for example, has held that motions to suppress "must be made by a defendant prior to trial" and federal trial courts "may not defer a ruling on a defendant's motion to suppress" because "such rulings and the government's ability to appeal them are at the core of [Fed. R. Evid. P.] 12(e)." United States v. Barletta, 644 F.2d 50, 54-55 (1st Cir. 1981).

The dissent's contention that the matter should be presented to the penal rules committee in order that they might consider amending HRPP Rule 12 is thus unfounded. Dissent at 5. The rules committee and the interested parties it represents have spoken on the issue in the plain language of HRPP Rule 12(e). There is no sound reason to continue disregarding the text of the rule while the rules committee considers whether to amend its clear language, and it is this court's responsibility to enforce the rule as it was written and intended. See also Brutsch v. Brutsch, 139 Hawai'i 373, 385, 390 P.3d 1260, 1272 (2017) ("[W]e note that pending cases are governed by existing rules, even if rule amendments applicable to future cases can be made.").

Although a defendant could theoretically enter a conditional plea in the middle of trial--assuming the State and the court agreed--such a procedure defeats the primary purpose of a conditional plea, which is to avoid "pressing forward with an unnecessary trial." 1A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 174 (4th ed. 2019 supp.).

Not only is this pragmatically problematic, but a protracted delay in the presentation or consideration of evidence could raise questions regarding the defendant's due process rights.

The dissent argues that the State should be permitted to prospectively waive its right to appeal if it so chooses. Dissent at 3. However, "it is well established that matters affecting the public interest cannot be made the subject of stipulation so as to control the court's action with respect thereto" and "[c]riminal cases are per se matters affecting public interest." State v. Tangalin, 66 Haw. 100, 101, 657 P.2d 1025, 1026 (1983) (holding invalid a stipulation as to a witness's credibility). A prosecutor should not be allowed to wager the outcome of a criminal case prior to knowing a ruling on a suppression motion in the hope that a trial court will correctly decide the motion--particularly when the payoff is at most a marginal increase in trial efficiency. "Our courts are not gambling halls but forums for the discovery of truth." State v. Flores, 131 Hawai'i 43, 56, 314 P.3d 120, 133 (2013) (quoting State v. Haanio, 94 Hawai'i 405, 415, 16 P.3d 246, 256 (2001) ). Further, the dissent's position would render the prosecution powerless to seek redress for a court's mistake of law or erroneous factual finding that forms the basis of an adverse ruling on a consolidated suppression motion, potentially resulting in a wrongful acquittal or other flawed verdict. Thus, in addition to being incompatible with the language and purpose of HRPP Rule 12(e) and HRS § 641-13(7), a stipulation by the State to forego the right to appeal a trial court's ruling on a suppression motion before the nature of that ruling is known is contrary to sound public policy. See Naititi, 104 Hawai'i at 235, 87 P.3d at 904 ("[W]e hold that HRS § 641-13(7) authorizes the prosecution to appeal orders suppressing evidence as illegally obtained, the intent of the statute being to facilitate the administration of justice in criminal cases by allowing the prosecution to obtain a conclusive ruling on issues involving searches, seizures, and confessions via direct appeal." (emphasis added)).

The parties of course remain free to stipulate to the incorporation of testimony and evidence introduced at the suppression hearing into the subsequent trial should they wish to do so.

Specifically, we overrule State v. Texeira, 62 Haw. 44, 45, 609 P.2d 131, 133 (1980), State v. Doyle, 64 Haw. 229, 230, 638 P.2d 332, 333-34 (1981), and State v. Thomas, 72 Haw. 48, 53, 805 P.2d 1212, 1214 (1991). To the extent that it allows trial courts to consolidate a hearing on a motion to suppress with a trial, we also overrule In re Doe, 107 Hawai'i 439, 114 P.3d 945 (App. 2005).

Doyle's holding was based, in part, on State v. Texeira, 62 Haw. 44, 46, 609 P.2d 131, 134 (1980), a case wherein this court recognized, but did not explicitly hold, that parties could stipulate to consolidate hearings on motions to suppress with trials.

To support its position, the Majority cites to cases from other jurisdictions, which interpret their court rules to require the determination of suppression motions prior to trial. See Majority at 144 Hawai'i at 550-51, 445 P.3d at 131-32 . Notably, none of these cases address the main issue here, which is whether the parties should be able to waive such a requirement upon stipulation.

Alternatively, the trial court could decline to consolidate the two proceedings. In that event, once the suppression hearing is complete, the parties could stipulate to admit some or all of the hearing testimony as evidence at trial.